No. 64.—WILLIAM SLADE, plaintiff in error, *vs.* DAVID S. LITTLE, defendant.

[1.] In an action of deceit, founded on a representation of solvency, the Court charged as follows: " That if the defendant represented E F as good for his debts and solvent, then plaintiff is entitled to recover, if they find it to be proven that he was insolvent, and that defendant knew it at the time of the sale :" *Held*, that this charge was erroneous.

Deceit, in Dooly. Tried before Judge POWERS, April Term, 1856.

David S. Little brought his action on the case for deceit against William Slade, charging a false representation as to the solvency of one Eli Fenn.

Upon the trial, the plaintiff offered in evidence the answers of DANIEL S. McCoy to certain interrogateries, who testified, that he and T. M. Jackson, as agents of plaintiff, sold a buggy to Eli Fenn. William Slade, the defendant, recommended him. Slade said to witness, upon being inquired of by witness, that Eli Fenn was acquainted with him, and had been for some time, (?) and that he, Fenn, was good for his contracts, as far as he knew. After the note given for the buggy fell due, witness called on defendant and told him that he

would not have sold the buggy to Fenn but for his recommendation. Defendant replied, that it would or should be paid. Defendant recommended Fenn just before the sale of the buggy, and at the time of the sale, about April or May, 1853; not certain as to dates; the words used are such as witness has answered; when Fenn was called on to pay for the buggy, defendant said he was a very clever fellow, and might be responsible; but that was not what he said when he recommended him; defendant then said he had property about him, but it was not his own. He further answered, that but for this recommendation the buggy would not have been sold to Fenn.

JAMES R. NELSON answered, by interrogatories, that Eli Fenn resided in Oglethorpe a part of the year 1852; he lived with William Slade, and was his bar-keeper of the hotel kept by William Slade; that is, attended to the passengers, baggage, &c. at the hotel; he heard defendant say, in the fall of 1852, that Fenn was insolvent, but did not say from what time defendant's insolvency dated.

SAMUEL DAWSON, by answers, testified, that he called at Slade's in 1852, in January or February, and inquired of him about the solvency of Eli Fenn; Mr. Slade, at that time, did not consider him good for the trifling sum of ten dollars; witness asked Slade to stand his security for that amount and he refused; Fenn was there in the year 1852 assisting Slade about the hotel, though does not know whether employed there or not; left Oglethorpe between February and May. Says further, that Fenn came to witness to buy goods during the time he staid with Slade; witness asked Slade if he would become responsible for them; and he would not, and advised witness not to sell him the goods, saying at the same time, he did so as his friend.

ELI FENN sworn, testified, that he purchased the buggy from one Turner M. Jackson, and not from Daniel S. McCoy; that he did not know any man at the carriage shop of plaintiff; that he applied to said Jackson to purchase a buggy on one evening, and was told by him that he would see

Slade *vs.* Little.

Samuel Dawson and Francis Lippett, and if they said so, witness could get the buggy; witness told him he would not have the buggy under such circumstances.   The next morning, as witness was passing, Jackson called him and sold him the buggy; no person was present but witness and Jackson, and that he did not know Daniel S. McCoy, and never bought any buggy from him; that Slade may have known he was insolvent; he paid Slade all the money he owed him before he went to Oglethorpe, except a small sum; the larger portion of witness' property was sold before he went to Oglethorpe; was in possession of two negroes in 1853 which belonged to his wife; agreed to give $150 for the buggy, which amount he did not pay; had it in his possession when judgment was obtained, and since a horse and buggy which he afterwards sold.

To the introduction of all which testimony defendant objected.

Verdict for plaintiff.

Defendant moved a rule for a new trial on several grounds:

1st. Because the Court charged the Jury, that if the defendant represented Eli Fenn as good for his debts and solvent, then plaintiff is entitled to recover, if they find it to be proven that he was insolvent, and that defendant knew it at the time of the sale.

2d. Because the Jury found contrary to evidence.

3d. Because the Jury found contrary to law.

4th. Because the Court erred in admitting in evidence the answers of McCoy, as to what Slade said about the insolvency of Fenn after the sale of the buggy.

The Court over-ruled the motion, and defendant's Counsel excepted.

Thos. H. Dawson, for plaintiff in error.

Cook & Montfort, for defendant.

*By the Court.*—Benning, J. delivering the opinion.

[1.] The charge of the Court was, "That if the defendant

represented Eli Fenn as good for his debts and solvent, then the plaintiff is entitled to recover, if they find it to be proven that he was insolvent, and that defendant knew it at the time of the sale."

The evidence on the point as to the representation, was that of one McCoy, and was as follows: "that he" (McCoy) "and T. M. Jackson, as agents of plaintiff, sold a buggy to Eli Fenn. William Slade, the defendant, recommended him; Slade said to witness, upon being inquired of by witness, that Eli Fenn was acquainted with him, and had been for some time, and that he, Fenn, was good for his contracts, as far as he knew."

Was the charge right?

To render a representation of solvency actionable, several things must, even according to *Pasley vs. Freeman*, (3 *Term Rep.*) concur, and among them these:

1. The party who makes the representation must know it to be false; the party to whom it is made, must not know it to be false.

2. The amount for which the representation intends to say that the person for whom it is made is good, should appear with reasonable certainty in the representation. The representation in *Pasley vs. Freeman* stated, that the person would be good for sixteen bags of cochineal.

3. The representation must be one, the parties to which are the parties to the action or their known agents.

None of these things concur in this representation.

There is nothing in the evidence going to show that Little was not acquainted with Fenn's condition, as to solvency.

And if there had been anything, the charge was such, that it would have excluded it from the Jury.

And then, for what amount is it that the representation intended to say that Fenn was good? "Good for his contracts." What contracts? Contracts to an amount indefinitely large? Contracts already made? Contracts not exceeding in amount those already made? Contracts similar to those already made? Similar in amount? Similar in the

time of credit? Similar in the consideration? Is there any certainty that the representation intended to say that Slade was good for a buggy? There is none.

And lastly, how can Little say that this representation was made to *him?* The proof is, that it was made to McCoy. It is true that the proof also is, that McCoy was his agent; but there is no proof that Slade knew this. And it is simply impossible that Slade could have intended to deceive Little, if he did not know that McCoy was representing Little.

In addition to all this, it may be asked whether the representation really amounted to a positive statement that Fenn was solvent at all. " As far as he knew." Does a man who speaks thus assume to know? Rather, does he not intimate that he does not know and hint that further inquiry ought to be made? It is to be remembered that Slade did not volunteer this representation. He made it not even at the instance of Fenn, but solely at the insance of McCoy, Little's agent. He made it in answer to McCoy's inquiry.

Upon the whole, we think that the charge of the Court was erroneous.

I remark for myself, that I do not acquiesce in *Pasley vs. Freeman*, and the cases which follow that case. See *Savage's Ex'rs vs. Jackson*, decided at Macon, January, 1856.