## WESTERN UNION TELEGRAPH CO. v. SCHRIVER et al.

### (Circuit Court of Appeals, Eighth Circuit. March 16, 1904.)

### No. 1,906.

1. TELEGRAPHS—FRAUDULENT MESSAGES—PARTIES.

Plaintiffs, dealers in live stock, were negotiating a sale of cattle to B., and, pending the negotiations, a fraudulent telegraph message, purporting to have been sent by the Bank of D., was received by the Commercial Bank of B., alleged to have been plaintiffs' agent for the purpose of receiving an assurance that B.'s check for the cattle would be paid on presentation; stating that the Bank of D. would honor B.'s draft for a certain amount. The Commercial Bank exhibited the telegram to plaintiffs, who, relying on the genuineness thereof, accepted B.'s check, and delivered the cattle. The check was not paid, B. proved to be insolvent, and the transaction resulted in a loss to plaintiffs of the entire value of the cattle. *Held*, in an action against the telegraph company for negligence in sending the same, an instruction based on the theory that it was permissible for the jury to say and to find that the telegraph company was fairly charged by the language of the telegram with notice that some one other than the addressee was intending to act on the information therein given, and would be affected by it, so as to take the telegram out of the well-recognized rule that a telegraph company cannot be liable to a stranger to the company and to the telegram, was erroneous.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Asa F. Call (Geo. H. Fearons and Craig L. Wright, on the brief), for plaintiff in error.

D. M. Kelleher (John A. Senneff, M. F. Healy, T. D. Healy, L. M. Shaw, and Jacob Sims, on the brief), for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge. Plaintiffs in the Circuit Court, defendants in error in this court, recovered a judgment against the telegraph company for $8,872, with interest, as damages occasioned to them by the company's transmission and delivery of this telegram:

"Denison, Iowa, March 14, 1902. To Commercial Bank, Britt, Iowa: We will honor Barnes draft for eight thousand nine hundred seventy-two dollars. [Signed] Bank of Denison."

Plaintiffs were dealers in live stock, and negotiated a sale of cattle to one Barnes, who made payment therefor by a check drawn by him on the Bank of Denison, and made payable to plaintiffs. The contention of plaintiffs was that the telegram was transmitted and delivered without the authority or knowledge of the Bank of Denison; that "defendant company knew, or by the exercise of reasonable care and

caution would have known," this; that the Commercial Bank at Britt was the agent of plaintiffs for the purpose of receiving assurance that Barnes' check would be paid upon presentation; that, upon the delivery of the telegram by defendant to the Commercial Bank, it was exhibited by the latter to plaintiffs, and, relying upon the telegram as genuine, plaintiffs then accepted Barnes' check, and delivered the cattle to him; that the check was not paid, Barnes proved to be insolvent, and the transaction resulted in a loss to plaintiffs of the entire value of the cattle. It was not claimed that defendant had any knowledge of the transaction between Barnes and plaintiffs, or of the relation of the Commercial Bank of Britt to plaintiffs, or that defendant had any knowledge of the purpose of the telegram, otherwise than as its purpose was disclosed upon its face. The transmission and delivery of the telegram in the name of the Bank of Denison was procured by Barnes, and the circumstances under which this was done were the subject of conflicting evidence. The company's charge for the message was paid at the sending office, and not by the bank at Britt or by plaintiffs.

Different rulings during the trial show that the court proceeded upon the view that it was permissible for the jury to say and find that the telegraph company was fairly charged by the language of the telegram with notice that some one other than the addressee, the Commercial Bank, was intending to act upon the information therein given, and would be affected by it, and, that if the jury placed this construction upon the telegram, the case would be taken out of the well-recognized rule, stated and applied by this court in McCornick v. Western Union Telegraph Co., 25 C. C. A. 35, 39, 79 Fed. 499, 38 L. R. A. 684, viz.: "But a telegraph company cannot be liable to a stranger to the company and to the telegram—one to whom it has never delivered the message, and to whom it owes no duty whatever—merely because he has seen the telegram and acted upon it to his injury." The court gave expression to this view in different portions of the charge to the jury, including the last paragraph, which was:

"In order to entitle the plaintiffs to recover in this action, it must appear that this dispatch, sent in the name of the Bank of Denison, was of such a character as upon its face it showed that it dealt with money or property; that it was of such a character as that the telegraph company could be fairly held to infer from the telegram that some person other than the Commercial Bank might be interested in it; that in fact it was delivered by the telegraph company, and was delivered under circumstances charging the telegraph company with a want of ordinary care in receiving it; and that it did not use ordinary care to ascertain whether the Bank of Denison authorized the dispatch to be sent; and that the evidence shows that in fact the Bank of Denison did not send this telegram, or authorize it to be sent; and that, as a consequence of acting upon it, the plaintiffs parted with their property, and have been damaged in the value of the cattle."

This is complained of, and we think it was error. The language of the telegram is clear, and is confined to a statement that the sender, a bank, will honor Barnes' draft for a stated sum. This statement is addressed to another bank, a part of the business of which is to advance money on checks or drafts drawn upon distant banks and others. It is a matter of common knowledge that these advances are made at times directly to the drawer, and at other times to the payee or

a remote holder, and that in each instance the bank advancing the money is a principal in the transaction, incurs a risk to the extent of the money advanced, and is influenced by its information respecting the probability of payment by the drawee. The telegram could therefore properly and reasonably relate to a possible and probable transaction of concern to the addressee, and in which its action would be influenced by the information given, all of which is apparent upon reading the telegram. It is true that checks and drafts are, for purposes of collection, frequently committed by the payee or holder to a bank under circumstances where the bank does not become the owner, risks nothing upon the probability of payment by the drawee, and is not influenced by information upon that subject; but this telegram contains nothing which suggests that it relates to such a transaction. In the absence of anything to the contrary, the inference to be properly drawn from the face of a telegram or other communication of this nature is that it relates to a matter which concerns the one addressed, and that it is his action, and not that of another, which is to be influenced. That no inference of its relation to a transaction like that between plaintiffs and Barnes properly or reasonably arises from the face of this telegram is quite manifest when it is considered that the telegram does not make the slightest reference to any past or prospective sale of cattle or other property, or to any person other than the addressee, the sender, and Barnes, or to an absence of interest on the part of any one of them in the information given. To say that the telegraph company "should have fairly inferred" from the face of the telegram that some one other than the addressee was "the real party in interest," as by one paragraph of the court's charge the jury were permitted to say in this case, is to reject the language used in the telegram, and the reasonable inference therefrom, and to substitute in their stead surmise and conjecture. Of course, this is not reasonable or permissible.

It is urged that the Commercial Bank of Britt, to which the telegram was addressed and delivered, was in fact the agent of plaintiffs for the purpose of receiving the information conveyed in the telegram, and that therefore plaintiffs were not, in legal contemplation, strangers to the company or to the telegram, but were the real parties in interest, and, as undisclosed principals of the addressee, may maintain this action, although there was no indication in the telegram that it was intended for them, or that the addressee was only an agent. But if the rule of law invoked in this contention be applicable to an action such as this, as to which no opinion is now expressed, it does not avoid the error already shown. It is so much of a departure from the view disapproved by us, which controlled the course of the trial, and under which the jury returned the verdict which supports the existing judgment, that to now apply it to the evidence for the purpose of sustaining the verdict and judgment would be to take the place of the trial court and jury, and to transcend the authority of an appellate tribunal.

The judgment is reversed, with a direction to grant a new trial.