WESTERN UNION TELEGRAPH CO v. SCHRIVER et al.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1905.)

No. 2,156.

1. TELEGRAPH COMPANY—LIABILITY TO UNDISCLOSED PRINCIPAL OF ADDRESSEE.

A telegraph company owes no duty to the undisclosed principal of the addressee of a telegram to exercise reasonable care to receive and transmit authorized messages only, because injury to him cannot be reasonably anticipated as the consequence of the lack of such care, and because such injury is the effect of an independent intervening cause—the act of the addressee.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Telegraphs and Telephones, § 37.]

2. ACTION—TORT ·FOR NEGLIGENT MISREPRESENTATION AND NOT CONTRACT.

The action for damages for such an injury is an action of tort for a false representation in the nature of a false warranty caused by the breach of the duty to exercise reasonable care to receive and transmit authorized messages only. It is not an action on a contract.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Telegraphs and Telephones, § 48.]

3. TELEGRAPH COMPANY—NEGLIGENCE—CARE OWING TO ADDRESSEES, SENDERS, AND UNDISCLOSED PRINCIPALS.

The telegraph company owes the duty to exercise ordinary care to receive and transmit genuine messages correctly to senders, to addressees, and to those who appear in the telegrams to be beneficiaries thereof, because injury to them may be reasonably anticipated as the probable consequence of negligence. It owes a like duty to the undisclosed principals of senders, because the law charges it with knowledge that these principals are in privity with it, through contracts made by the senders, and injury to them from its negligence may be reasonably anticipated.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Telegraphs and Telephones, §§ 26, 37.]

4. NEGLIGENCE—LIMIT OF ACTIONABLE DAMAGES.

An injury that could not have been foreseen or reasonably anticipated as the probable consequence of negligence is not actionable.

An injury that is not the natural consequence of an act of negligence, and that would not have resulted from it but for the interposition of some new independent cause that could not have been anticipated, is not actionable.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 71–73.]

5. SAME—DUTY TO PLAINTIFF INDISPENSABLE.

A duty of care owing by the party who occasions the loss to him who suffers it is an indispensable element of actionable negligence. The breach of such a duty owing to others is immaterial.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, § 3.]

6. DECEIT—FALSE REPRESENTATIONS—PARTIES WHOSE KNOWLEDGE OF THEM IS NOT TO BE REASONABLY ANTICIPATED—LIABILITIES.

    One who makes a false representation owes no duty of care to tell the truth to those to whom he does not communicate it and to whom he does not anticipate that it will be conveyed, and a person of ordinary prudence and intelligence would not anticipate that it would be conveyed, and such parties have no cause of action against him for injuries they sustain in reliance upon it.

7. DECEIT—LIABILITY OF INNOCENT PARTY FOR FRAUD OF A THIRD PARTY.

    The rule that, where one of two innocent parties must suffer from the fraud of a third, he who furnishes the means to commit it must bear the loss, is limited in its application to cases in which the party chargeable makes the third party his real or apparent agent, cases in which he provides the means intentionally, or for a dishonest purpose or negligently, and cases in which he derives a benefit from the fraud of the third party.

    It does not govern the great majority of cases where one innocently, for an honest purpose and with reasonable care, furnishes to a third party the means by which he perpetrates a fraud from which he who provides the means derives no benefit.

    [Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Estoppel, § 188.]

8. APPEAL—PRESUMPTIONS.

    The absence of reported judgments and decisions sustaining an alleged liability under a given state of facts raises a strong presumption that no such liability exists.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa.

H. D. Estabrook, Asa F. Call, and Rush Taggart (George H. Fearons, Craig L. Wright, and John F. Dillon, on the brief), for plaintiff in error.

D. M. Kelleher (John A. Senneff, M. F. Healy, Thomas D. Healy, and Robert Healy, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

SANBORN, Circuit Judge. This is an action against the Western Union Telegraph Company for damages caused by its receipt and delivery of an unauthorized message. There was substantial evidence at the trial of these facts: Schriver Bros., the plaintiffs below, sold cattle to one Barnes for $8,972, and took his check for the purchase price upon the Bank of Denison for that amount. They refused to surrender the cattle without some assurance that the check would be paid. Barnes promised that he would have the Bank of Denison send a guaranty of payment of the check by telegraph. The plaintiffs directed him to have the message sent to the Commercial Bank of Britt. Barnes went to Denison and without authority from the bank telephoned to the defendant's operator in that town this message:

"Denison, Ia., March 14, 1902.

"To Commercial Bank, Britt, Iowa: We will honor Barnes' draft for eighty-nine hundred seventy-two dollars.        Bank of Denison."

The operator at Denison ordinarily received by telephone messages to be sent by telegraph. Both the Bank of Denison and Barnes had sent messages in that way concerning the business of Barnes, and had arranged with the operator that such telegrams should be charged

to Barnes. Sometimes the bank had telephoned messages of this nature in its own name and sometimes Barnes had telephoned them in the name of the bank, and there had been no repudiation of them, or objection to them by the bank, although many such messages had been sent before that of March 14, 1902, was received. This message was sent to Britt and delivered to the Commercial Bank. One of the plaintiffs saw it, and in reliance upon it delivered the cattle to Barnes. Neither the check which they took from Barnes nor the purchase price of the cattle was ever paid. The court charged the jury, over the objection and subject to the exception of the defendant, that, if the Commercial Bank of Britt was the agent of the plaintiffs to receive the message, they might recover of the telegraph company the loss which they had sustained by their reliance upon the telegram, and there was a verdict and judgment in their favor.

May the undisclosed principal of the addressee of a message recover of the telegraph company the damages he sustains from the failure of its operator to exercise reasonable care to receive and transmit authorized messages only? A telegraph company is not liable for the lack of such care to one of whose interest in the telegram it has no notice, and who is neither the principal of the sender nor of the addressee. McCormick v. Western Union Tel. Co., 25 C. C. A. 35, 79 Fed. 449, 38 L. R. A. 684; Morrow v. Western Union Tel. Co. (Ky.) 54 S. W. 853; Western Union Telegraph Co. v. Kirkpatrick, 76 Tex. 217, 218, 13 S. W. 70, 18 Am. St. Rep. 37; Western Union Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826.

The undisclosed principal of the sender of a message may recover for negligence in its transmission or delivery, because the company makes a contract with the sender which that knowledge of the law it may not deny notifies it inures to the benefit of any undisclosed principal whom the sender may have. But neither the sender nor his principal can recover for negligence of the company in the receipt or transmission of a message which the sender forges or fraudulently signs without authority, because the contract of transmission is voidable for the fraud of the sender, and neither he nor his principal can take advantage of his wrong. A telegraph company owes the duty to exercise reasonable care to receive and transmit authorized messages only to the addressees of messages, and to those persons who, the telegrams inform it, have a beneficial interest in the dispatches it transmits. It owes this duty to these parties because injury to them is the natural and probable consequence of its want of care, an effect which it may reasonably anticipate from its notice of the fact that they are interested in the messages. But does it owe this duty to the undisclosed principal of an addressee of a message of whose interest it has no notice?

Reference has been made to the statutes of Iowa (Code Iowa, 1897, §§ 2163, 2162, 2161, 2164), but they give no direct or inferential reply to this question (Bank of Havelock v. Western Union Telegraph Company, 141 Fed. 522), and it must be answered by a consideration and application of the general principles and rules of the law. The arguments at the bar and in the briefs have traversed a wide field, and it is indispensable to a judicious consid-

eration and a just decision of the issue in hand that before entering upon its discussion the true foundation and the real nature of the cause of action presented and the rules of law which must govern it shall be clearly in mind. The cause of action is for the false representation that the Bank of Denison signed the message. It is not an action for deceit, because the intent to deceive or knowledge of the falsehood or a reckless misrepresentation in ignorance of the fact is indispensable to an action of deceit. Union Pac. Ry. Co. v. Barnes, 64 Fed. 80, 83, 12 C. C. A. 48, 51; Kahl v. Love, 37 N. J. Law, 5, 6, 7; Polhill v. Walter, 3 Barn. & Adolph. 114, 124. There was no such intent, knowledge, or recklessness in this case. The operator did not intend to deceive any one. He did not know that Barnes was not authorized to send the message in the name of the bank. He undoubtedly believed that he had this authority, and not without some reason; for he had repeatedly sent messages in its name, and no repudiation by the bank or other objection had been made. His only fault was his failure to make inquiry or to notify the addressee regarding the questionable authority of Barnes in the light of facts and circumstances which might naturally have aroused the suspicion of a person of ordinary prudence and intelligence in a like situation and have suggested an investigation of that authority. Western Union Tel. Co. v. Totten, 141 Fed. 533. The action is not founded upon a false warranty or upon any contract. Conceding, without deciding, that the addressee and the apparent beneficiary of a genuine message honestly sent may recover in an action upon the contract for a failure to transmit or to deliver it speedily and correctly, the only basis of such a recovery is that the telegraph company and the sender have made the contract for the transmission for the benefit of the addressee or of the apparent beneficiary. But the only contract which the telegraph company made in this case was with Barnes. He induced the agreement by the fraudulent representation that he was authorized to send the message in the name of the Bank of Denison. If the plaintiffs or the Bank of Denison have any contract rights here, they derive them from Barnes as the beneficiary of his agreement. But neither they nor he can enforce that contract because it is voidable by the company for the fraud of Barnes and because neither they nor he can take advantage of his wrong.

There remains but one ground upon which this action may stand, and that is the breach of the duty which the telegraph company, in common with every other party, owes to those to whom it makes representations, which it may reasonably anticipate that they may rely and act upon, to exercise reasonable care to make those statements true. This is an action for the breach of this duty. It is an action of tort for a false representation in the nature of a false warranty caused by failure to exercise reasonable care to receive and transmit authorized messages only. Bartlett v. Tucker, 104 Mass. 336, 6 Am. Rep. 240; May v. Western Union Tel. Co., 112 Mass. 90, 95. But a duty of care owing by the party who occasions the loss to him who sustains it is an indispensable element of actionable negligence. "If the defendant owed a duty, but did not owe it to the plaintiff, the action will not lie." 1 Shearman & Redfield on Negligence, § 8;

Bishop on Noncontract Law, § 446; Savings Bank v. Ward, 100 U. S. 195, 202, 25 L. Ed. 621; Slade v. Little, 20 Ga. 371, 374; Kahl v. Love, 37 N. J. Law, 5, 8; Winterbottom v. Wright, 10 M. & W. 109; Longmeid v. Holliday, 6 Exch. 764, 765; Huset v. J. I. Case Threshing Mach. Co., 120 Fed. 865, 868, 57 C. C. A. 237, 240, 61 L. R. A. 303; McCormick v. Western Union Tel. Co., 79 Fed. 449, 452, 25 C. C. A. 35, 39, 38 L. R. A. 684; Western Union Tel. Co. v. Schriver, 129 Fed. 344, 346, 64 C. C. A. 96, 97, 98. One who makes a representation owes no duty of care to tell the truth to those to whom he does not communicate it and to whom he does not anticipate that it will be conveyed, and a person of ordinary prudence and intelligence in his situation would not anticipate that it would be conveyed, and such parties have no cause of action against him for injuries they sustain by reason of the falsity of the representation. "Courts will give appropriate redress or relief for actionable misrepresentation to anyone to whom the same was made or for whom it was intended, and only to such." 1 Bigelow on Fraud, p. 197, § 2; Slade v. Little, 20 Ga. 371, 374; Henry v. Dennis, 95 Me. 25, 49 Atl. 58, 85 Am. St. Rep. 365; Carter v. Harden, 78 Me. 528, 7 Atl. 392. The reason is that the loss to him to whom the party who makes the misrepresentation does not communicate it, and cannot reasonably anticipate that it will be communicated, is not the natural or probable consequence of his act. It is the effect of an independent cause—of the unexpected conveyance of the misrepresentation to the third party by the person to whom it was originally made. Without this new cause, the injury to the third person would not occur and the intervention of this new agency, as Wharton felicitously expresses it, "insulates" the original act of negligence from the injury. Wharton on Negligence, (2d Ed.) § 134; Huset v. J. I. Case Threshing Mach. Co., 120 Fed. 865, 867, 57 C. C. A. 237, 239, 61 L. R. A. 303.

Let us now turn to the consideration of the immediate question in the light of these indisputable rules of law. There is a sentence in section 427 of Thompson on Electricity where he is discussing the liability of a telegraph company to the addressee of a message in which it is written that:

"The true view, * * * is one which elevates the question above the plane of mere privity of contract and places it where it belongs, upon the public duty which the telegraph company owes to any person beneficially interested in the message, whether the sender, or his principal, where he is agent, or the receiver, or his principal where he is agent."

This sentence is quoted with apparent approval in Western Union Tel. Co v. Mellon (Tenn.) 33 S. W. 725, 726, a case in which one who appeared on the face of a message to be its beneficiary secured damages for delay in its delivery, and it is urged upon our attention with much force by counsel for the plaintiffs. But the law is settled beyond dispute that one who has a beneficial interest in a telegram of which the company has no notice has no cause of action for the loss he sustains by the negligence of the company in its receipt or transmission, because the company cannot anticipate his injury, and owes him no duty. McCormick v. Western Union Tel. Co., supra,

and other cases cited under it. No authority is cited by Mr. Thompson, the diligence of counsel has presented, and our research has discovered no decision of any court, except the judgment of the court now under review, which has ever sustained an action or a judgment against a telegraph company for loss inflicted upon the undisclosed principal· of an addressee by reason of the negligence of the telegraph company in handling the message. This pregnant fact raises a strong presumption that, when this message was received and transmitted, it was not the law that the company was liable for negligence to the undisclosed principal of the addressee. If it had been, judgments founded upon it would probably not have been lacking. Moreover, in an action wherein an·addressee, who was the agent of the undisclosed principal, was the plaintiff, he was met by the defense that the right of action was in the principal, and the St. Louis Court of Appeals sustained his action and said:

"We rest our conclusion upon the ground that the telegram in which the mistake occurred was not directed to the J. I. Case Threshing Machine Company; that there was nothing on the face of it which apprised the defendant that it related to the business of the J. I. Case Threshing Machine Company; that it therefore does not appear that, in transmitting it, the defendant undertook any duty in behalf of the J. I. Case Threshing Machine Company. The mere fact that it was addressed to the plaintiff in care of the J. I. Case Threshing Machine Company does not raise any duty on the part of the defendant in behalf of that company." Lee v. Western Union Tel. Co., 51 Mo. App. 375, 382.

In this way it appears that at the time the telegram was sent the declared law upon this subject had been for 10 years that a telegraph company was not liable for negligence to the undisclosed principal of the addressee. The contention now is that this declaration and the practice in accordance with it are erroneous, and analogous cases, maxims, and general rules of law are brought to our attention to sustain this position. Counsel say that the defendant made its representation and owed its duty to a class of persons, that this class included all who might take the check or draft described in the message in reliance upon the telegram, and that the defendant is a member of this class. They cite in support of this contention these cases: Swift v. Winterbotham, L. R. 8 Q. B. Cas. 244, 253; Bedford v. Bagshaw, 29 L. J. (Ex.) 65; Polhill v. Walter, 3 Barn & Adolph, 114; North Atchison Bank v. Garretson, 51 Fed. 168, 2 C. C. A. 145; Garrettson v. North Atchison Bank (C. C.) 47 Fed. 867, 871; Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82; and Bank of Montreal v. Thayer (C. C.) 7 Fed. 622. But the class, if any, to which a telegraph company owes this duty in regard to the transmission of messages concerning commercial paper, does not include all who may see the messages and take the paper in reliance upon them. McCornick v. Western Union Tel. Co., 79 Fed. 449, 25 C. C. A. 35, 38 L. R. A. 684. If the concession were made that the representation here was made, and that the duty was owing to a class, that class would necessarily be limited by the general rule that it was those only to whom the company might reasonably have anticipated that the representation would be conveyed that its duty was owing. Con

cede that the company might have reasonably anticipated that the addressee would purchase or discount the draft, and that it would thereafter in the ordinary course of business indorse and transfer it with the telegram to a purchaser for value, and that in this way the draft and the message might pass to remote indorsees or purchasers, the addressee and the indorsees or purchasers under the addressee might then constitute a class to which the company might owe the duty of truthful representation. But the plaintiffs are not of this class, and it could not include them or others than those who purchased the draft directly or remotely from the addressee, because a person of ordinary prudence and diligence in the situation of the company could not have reasonably anticipated that any but the addressee and its immediate and remote indorsees and purchasers would see or act upon the telegram. In the ordinary course of commercial business no others would become aware of or act upon it. Much less could such a person have anticipated that the plaintiffs without the purchase of any draft from the addressee would take an original draft from Barnes to themselves, would go to the addressee and read a telegram which disclosed no interest in them, and then in reliance upon it would deliver cattle and lose their price. The remarks of Judge Van Devanter in the opinion of this court upon the former hearing of this case are pertinent here. He said:

"It is true that checks and drafts are, for purposes of collection, frequently committed by the payee or holder to a bank under circumstances where the bank does not become the owner, risks nothing upon the probability of payment by the drawee, and is not influenced by information upon that subject; but this telegram contains nothing which suggests that it relates to such a transaction. In the absence of anything to the contrary, the inference to be properly drawn from the face of a telegram or other communication of this nature is that it relates to a matter which concerns the one addressed, and that it is his action, and not that of another, which is to be influenced. That no inference of its relation to a transaction like that between plaintiffs and Barnes properly or reasonably arises from the face of this telegram is quite manifest when it is considered that the telegram does not make the slightest reference to any past or prospective sale of cattle or other property, or to any person other than the addressee, the sender, and Barnes, or to an absence of interest on the part of any one of them in the information given." Western Union Tel. Co. v. Schriver, 129 Fed. 344, 346, 64 C. C. A. 96, 98.

The authorities cited are not inconsistent with this view. They are cases in which indorsees or purchasers of notes or bills in the ordinary course of business from those to whom the representations were made, or persons to whom such representations were directly made, had lost in reliance upon them, or cases in which the communication of the representations to third parties and the loss upon it were its natural and probable effect. Polhill v. Walter, 3 Barn. & Adolph. 114, 123, and Lobdell v. Baker, 3 Metc. (Mass.) 469, are typical and perhaps the strongest authorities in support of the contention of the plaintiffs. In the former the remote indorsee of the payee of a draft recovered from one who accepted it in the name of the drawee without authority. In the latter the remote indorsee of a note from one to whom the owner had sold it under a representation that a prior indorsement was valid, which had been made by a minor and which he knew to be void,

obtained a judgment against the original owner. The case of Swift v. Winterbotham, L. R. 8 Q. B. Cas. 244, 253, is of a different character, but it is wide of the mark in this action. In that case one bank inquired of another the financial standing of Sir W. Russell and received an answer that it was good, when the second bank knew that it was bad. The inquiry had been made for a customer of the first bank to whom the latter communicated the answer upon which he relied to his injury. He recovered of the second bank because a custom of the banks in England was proved to make such inquiries for their customers, and it was held that the second bank might have reasonably anticipated, in view of this custom, that its answer would be conveyed to, and acted upon by such a customer. The evidence discloses no custom in this country that the telegraphic acceptance of a draft that is directed by one bank to another which has not requested it, or inquired for it is communicated to, and acted upon by a customer of the addressee, to his injury. The telegraph company could not have reasonably anticipated such a result as the probable effect of the delivery of a telegram to the Bank of Britt. It is not here decided that the immediate and remote purchasers of commercial paper in the ordinary course of business from the addressee of a telegram, which contains a misrepresentation relative to the paper, may recover of the telegraph company any losses they sustain thereby. If they may, the plaintiffs do not belong to that class. The conclusion here is that a telegraph company does not owe the duty to exercise ordinary care to make truthful representations only in the transmission of telegrams concerning commercial paper to those who acquire the paper, but who are neither addressees of the telegrams nor the immediate or remote indorsers or purchasers of it from the addressees, in the absence of any notice that they have an interest in such messages.

Counsel invoke the rules that where one supplies another with the means of perpetrating a fraud against one person, and it is inflicted upon another by the use of those means, he is liable for the loss, and that, where one of two innocent persons must suffer from the fraud of a third, that one should bear the loss who enabled the third party to inflict the injury. They argue that because the telegraph company furnished the telegraph and the operator by means of which Barnes was enabled to defraud the plaintiffs the company is liable to the latter, although it acted without fault or negligence. But the rules upon which reliance is here placed are not of universal or even of general application. Their effect is limited to cases in which the party charged has by fraud or through negligence, or by his actual or apparent authority to an agent, provided the third party with the opportunity to commit the wrong, and to cases in which he has derived benefit from the loss inflicted upon another by the fraud of the third. Cases of the first class are Wilson's Adm'r v. Green, 25 Vt. 450, 60 Am. Dec. 279; Bauman v. Bowles, 51 Ill. 380; Walters v. Western & A. R. Co. (C. C.) 56 Fed. 369, 371. Cases of the second class are Bridegman v. Green, Wilmot's Reports, 64; Huguenin v. Barclay, 14 Ves. 288, 289; Gordon v. McCarty, 3 Whart. 407, 411; Commonwealth v. Call, 21 Pick. 515; Tuckwell v. Lambert, 5 Cush. 23. Wilson v. Green is

typical of its class. A creditor who held the unpaid note of his debtor, signed by two sureties, delivered it to the debtor to enable him to defeat a trustee process by producing the note in support of his testimony that it was paid. While the debtor had the note for this purpose, he exhibited it to the sureties and led them to believe that he had paid it, to their injury. The court held that the creditor was chargeable with the loss sustained by the sureties, because he delivered the note to the debtor for a dishonest purpose. But it expressly decided that, if he had intrusted it to his debtor for an honest purpose, he would not have been liable for the loss. The rules have no application to the vast majority of cases in which one of two innocent parties suffers from the fraud of a third. One furnishes writing materials to another who forges a note and defrauds an innocent third party; one delivers a check to another in the ordinary course of business in the payment of a debt, the payee raises it and sells it to an innocent purchaser; one purchases transportation of a railroad company and travels to a distant city and defrauds a stranger; one personates another and by means of the telegraph and operator sends a forged telegram. Western Union Tel. Co. v. Meyer, 61 Ala. 158, 32 Am. Rep. 1. But in these cases and in the vast majority of cases in which an innocent party furnishes to a third person the means to commit a fraud he incurs no liability to the victim. Real or apparent agency, fraud, negligence, or the derivation of benefit from the fraud are indispensable conditions of a liability under the rules invoked here. Friedlander v. Texas, etc., Ry. Co., 130 U. S. 416, 424, 9 Sup. Ct. 570, 32 L. Ed. 991, is an illustration of the limitation of these rules. A station agent fraudulently made a bill of lading in favor of one Lahnstein when the railway company had received none of the merchandise described therein. Lahnstein attached the bill to a draft and obtained $8,000 from Freidlander & Co. upon it. The railway company had provided the railroad, the station agent, and the blank bill of lading, by means of which Lahnstein was enabled to perpetrate the fraud. But the Supreme Court denied a recovery because the station agent was without authority to issue the bill in the absence of the goods, although the railway company had furnished him with the means which he and his confederates used to commit the fraud.

Cases of the second class rest upon the proposition that whoever receives money, property, or benefit from another through the fraud of a third person should make restitution. "Let the hand receiving it be ever so chaste, yet, if it comes through a corrupt polluted channel, the obligation of restitution will follow it." Bridgeman v. Green, Wilmot's Rep. 64. "The damages which ground the action follow the property." 1 Am. Lead. Cas. 643. The case in hand comes within neither class, but falls beyond the limitation of liability under these rules. Barnes was neither the real nor the apparent agent of the defendant. It supplied its telegraph and operator without negligence, for an honest purpose, and it derived no benefit from the loss of the plaintiffs. It is not liable to them under the rules cited.

It is contended that because the telegraph company owes the duty of care to receive and transmit messages correctly to the addressees,

to the senders, and to the undisclosed principals of the senders, it therefore owes it to the undisclosed principals of addressees. But the duty to the undisclosed principals of senders rests on the fact that contracts have been made between the senders and the telegraph company, and that in the negotiation and enforcement of contracts the law places undisclosed principals in the shoes of their agents, so that the telegraph company, which must know the law, is charged with notice and may reasonably anticipate that its misrepresentations may affect them. It has no contracts with addressees, and hence it is not charged by the law with notice that their undisclosed principals or others to whom they may display the messages will probably be affected by them. For the same reason the case of Culliford v. Gadd (Super. Ct. N. Y.) 17 N. Y. Supp. 457, and others of like character, which are pressed upon our attention with great force, are neither controlling nor persuasive. In that case an agent of an undisclosed principal was induced by misrepresentations made to him to purchase an interest in a syndicate and to pay for it with money of his principal. The latter was permitted to recover. The duty to the undisclosed principal in that and other cases of like character is founded on the contracts. As there are no such contracts with addressees, no such duty to their unknown principals arises. Nor is the case of Perkins v. Evans, 61 Iowa, 35, 36, 15 N. W. 584, more pertinent. In that case the undisclosed principal of an agent who had been induced to purchase property, to his injury, by a false entry knowingly made by the auditor on the books of the county was permitted to recover his damages in an action on the bond of the auditor. The books were public records. The entries on them were representations to all who might lawfully examine and rely upon them, and the natural and probable effect of false entries in them was the deceit and injury, not only of those who personally examined them, but also of their undisclosed principals as well, because it is common knowledge that those who make such examinations are generally the agents of others. The message in this case was a private communication. It was directed to a single addressee. The company was forbidden by law to disclose it to others (Code Iowa 1897, § 2162), and such messages are generally intended for and acted upon by those to whom they are directed, and not by others. There is no persuasive analogy between these cases.

An argument by analogy is drawn from actions against transportation companies. It is said that the duties and liabilities of telegraph companies are like those of common carriers, and that, as owners of property who are neither consignors nor consignees and whose interest is unknown to a carrier may recover for an injury or loss to their property during its transportation, any one interested in a telegram should be permitted to recover for negligence in its receipt or transmission. The argument proves too much. It proves that telegraph companies are liable for injuries to strangers to the telegrams, their senders, and addressees, while the undisputable law is the contrary. Moreover, carriers are insurers of the safe transportation of goods. Telegraph companies are not guarantors of the correct receipt and transmission of messages. Actions for loss or injury

to property in transportation rest upon the ownership and loss or injury, actions for misrepresentations of messages through negligence, upon the duty to exercise care to tell the truth, upon the breach of that duty, upon reliance upon the misrepresentation and upon resulting injury. The bases of the actions and the rules of law which govern them differ so widely that this argument by analogy fails to convince.

The telegraph cases are cited and exhaustively reviewed. But, when the opinions in them are carefully read and analyzed, they recognize and affirm the rule that a company owes a duty and incurs a liability to those parties only of whose interest it has notice and for those injuries only which it might reasonably anticipate. The pertinent cases fall into four classes: (1) Those which assert a duty and liability to the undisclosed principal of the sender. Milliken v. Western Union Tel. Co., 110 N. Y. 403, 18 N. E. 251, 1 L. R. A. 281; Harkness v. Western Union Tel. Co., 73 Iowa, 190, 34 N. W. 811, 5 Am. St. Rep. 672; Leonard v. Telegraph Co., 41 N. Y. 544, 1 Am. Rep. 446; Cashion v. Western Tel. Co., 124 N. C. 459, 32 S. E. 746, 45 L. R. A. 160; Western Union Tel. Co. v. Morris, 28 C. C. A. 56, 83 Fed. 992; Western Union Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Western Union Tel. Co. v. Broesche, 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843; Western Union Tel. Co. v. Church (Neb.) 90 N. W. 878, 57 L. R. A. 905. (2) Those which recognize a duty and liability to a person who appears on the face of the telegram to be its beneficiary although neither the sender nor the addressee. Western Union Tel. Co. v. Mellon, 96 Tenn. 66, 33 S. W. 725; Western Union Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Telegraph Co. v. McKibben, 114 Ind. 511, 14 N. E. 894. (3) Those which deny any duty or liability to those who do not appear from the message to have any interest in it. McCormick v. Western Union Tel. Co., 79 Fed. 449, 25 C. C. A. 35, 38 L. R. A. 684; Western Union Tel. Co v. Kirkpatrick, 76 Tex. 217, 218, 13 S. W. 70, 18 Am. St. Rep. 37; Western Union Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826; Morrow v. Western Union Tel. Co. (Ky.) 54 S. W. 853. (4) The decision which denies any liability to the undisclosed principal of the addressee. Lee v. Western Union Tel. Co., 51 Mo. App. 375. In the cases of the two latter classes the duty and liability are denied on the ground that the company received no notice from the telegrams of their probable existence, and hence could not have anticipated injuries to those who did not appear to be beneficiaries of the messages or to be likely to incur the damages which were sought. In Western Union Tel. Co. v. Kerr (Tex. Civ. App.) 23 S. W. 564, 565, the court refused to permit the undisclosed principal of a sender to recover damages for mental anguish on the ground that such damages could not have been reasonably anticipated and were not the natural consequence of the negligence, although the right of such a principal to maintain the action for such damages as appeared from the telegram to be likely to result to her was conceded. The same ruling may be found in Pacific Express Co. v. Redman (Tex.

Civ. App.) 60 S. W. 677. In Cashion .v. Western Union Tel. Co., 124 N. C. 459, 32 S. E. 746, 45 L. R. A. 160; Western Union Tel. Co. v Broesche, 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843, and Western Union Tel. Co. v. Church (Neb.) 90 N. W. 878, 57 L. R. A. 905, all the damages which the undisclosed principal of a sender may suffer are held to have been reasonably anticipated by the telegraph company and recoverable. In Western Union Tel. Co. v. Wood, 57 Fed. 471, 6 C. C. A. 432, 21 L. R. A. 706, the addressee of a telegram was denied damages for mental suffering and for a failure to attend to business before a person named in the message died, because the telegram did not indicate any relationship or business between the addressee and the deceased. A more extended review of cases would be futile. Suffice it to say that through them all the line of demarcation between legal injury and that damnum absque injuria for which courts may not grant relief is the answer to the question whether the message gave such notice of the interest and probable injury of the plaintiff that the company might reasonably have anticipated the latter as the natural and probable effect of its negligence.

The arguments and briefs in this case seem to have invoked with rare ability and persuasive power every reason and decision that makes for the contention of either of the parties. An endeavor has been made to consider them with patience and deliberation but nothing has been presented which conclusively answers the question whether a telegraph company is liable to the undisclosed principal of an addressee in favor of the plaintiffs. That answer must therefore be deduced from the general rules of law which govern actions for negligence and misrepresentation to which reference was made in the earlier part of this opinion. One who makes a false representation owes no duty of care to tell the truth to those to whom he does not communicate it, to whom he does not anticipate that it will be communicated, and to whom a person of ordinary prudence in his situation would not have anticipated that it would be conveyed. The message was directed to the Commercial Bank of Britt. It was a private communication. The company was prohibited from disclosing it to others than the addressee. The presumption was that it was intended for and would be permitted to affect the addressee only. The plaintiffs were not mentioned in it, and it contained nothing from which a person of reasonable prudence could have anticipated that it would be communicated to them. When, therefore, the telegraph company delivered it to the Bank of Britt, it made no representation to the plaintiffs, it intended to make none, and it could not have anticipated that any would be made. A person of ordinary prudence and intelligence in its situation would not have anticipated that this telegram would be conveyed to them. Witness the fact that no report of final judgment for the breach of this duty of truthful representation to the undisclosed principal of an addressee of a telegram has been found in the books, and that the decision of the Missouri court in 1892 that such an action may not be maintained still stands unchallenged by the decision of any appellate tribunal. In Slade v. Little, 20 Ga. 371,

the undisclosed principal of an agent sued the defendant for damages which resulted to him from a misrepresentation regarding the solvency of a third party which the defendant had made to the agent. The court denied recovery and said, speaking of the plaintiff:

"And, lastly, how can Little say that this representation was made to him? The proof is that it was made to McCoy. It is true that the proof also is that McCoy was his agent; but there is no proof that Slade knew this. And it is simply impossible that Slade could have intended to deceive Little, if he did not know that McCoy was representing Little."

Again the limitation upon actions for damages for negligence, which has been adopted by the Supreme Court, and generally approved and quoted throughout the land, was expressed by Chief Justice Beasley in these words:

"It is not every one who suffers a loss from the negligence of another that can maintain a suit on such ground. The limit of the doctrine relating to actionable negligence is that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business is plainly necessary to restrain the remedy from being pushed to an impracticable extreme. There would be no bounds to actions and litigious intricacies, if the ill effects of the negligences of men could be followed down the chain of results to the final effect." Kahl v. Love, 37 N. J. Law, 8.

An injury that is the natural and probable consequence of an act of negligence is actionable. One that could not have been foreseen or reasonably anticipated as the probable effect of such an act will not sustain an action. An injury is not actionable which would not have resulted from the act of negligence except for the interposition of an independent cause. The injury to the plaintiffs in this case could not have been reasonably anticipated as the probable consequence of the defendant's negligence. It was not the natural or probable effect of that negligence. It would not have resulted without the intervention of an independent cause, without the communication of the telegram to the plaintiffs by the responsible human agency of the Commercial Bank of Britt, an intervention which could not have been reasonably anticipated and which interrupted and turned aside the natural sequence of causation and relieved the defendant from the subsequent results of its act. Wharton on Negligence, § 134; Bishop on Noncontract Law, § 42; Huset v. J. I. Case Threshing Mach. Co., 120 Fed. 865, 867, 57 C. C. A. 237, 239, 61 L. R. A. 303.

For these reasons, the conclusion is that a telegraph company does not owe the duty to exercise reasonable care to receive and transmit authorized messages only to the undisclosed principal of an addressee of a message, and the judgment below is reversed, and the cause is remanded to the Circuit Court, with instructions to grant a new trial.