WESTERN UNION TELEGRAPH CO. v SMITH et al. (No. 5502.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 20, 1915.)

1. CONTRACTS ☞128 — AGREEMENTS — VALIDITY.

An agreement by a creditor who had charged the debtor with crime to receive the amount of the debt and stop prosecution would be illegal and void.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 633–653; Dec. Dig. ☞128.]

2. TELEGRAPHS AND TELEPHONES ☞48 — TRANSMISSION OF MESSAGES — CONVERSION OF MONEY.

A cousin of one charged with crime wired to the prosecuting attorney of the county to know whether there was any case against accused. The telegraph agent, posing as the prosecuting attorney, replied that the case was with the grand jury, and the cousin offered to pay the claim, which was the basis of the prosecution, in case it was stopped. The telegraph agent obtained possession of this money. *Held* that, as the condition of the agreement was illegal and void, and as title to the money did not leave accused's cousin until prosecution was stopped, the creditors of accused, who instituted prosecution, had no right of action against the telegraph company for the conversion.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 30; Dec. Dig. ☞ 48.]

Appeal from Brazoria County Court; J. W. Munson, Judge.

Action by J. G. Smith and T. L. Smith, doing business as Smith Bros., against the Western Union Telegraph Company. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Geo. H. Fearons, of New York City, and Hume & Hume, of Houston, for appellant. Masterson & Rucks, of Angleton, for appellees.

CARL, J. Appellees, J. G. and T. L. Smith, doing business in Brazoria county under the name of Smith Bros., sued the Western Union Telegraph Company in the justice court and recovered. The case was, on appeal, again tried in the county court, resulting in a verdict for appellees for $125; the costs of that appeal being adjudged against appellees.

It is alleged that one R. G. Lightfoot was appellant's agent and operator, and while such, in the discharge of his duties, received and sent the following telegrams:

"Sept. 14th, 1907. To Prosecuting Attorney, Brazoria County, Brazoria, Texas. Any case in your hands against Charles Clayton wire. Answer my expense. C. T. Hayes."

"Received at 9 coll. Brazoria, Tex. Sept. 15th, 1907. C. T. Hays, Hannibal, Mo., Sept. 15th, 1907. Matter with grand jury no report yet. R. C. Lightfoot."

"Sept. 15, 1907. To Mr. Lightfoot, Prosecuting Attorney, Brazoria, Texas. Will payment to Smith satisfy Smith and you and stop prosecuting. C. T. Hays."

"Received at 17 coll. Brazoria, Texas, Sept. 16th, 1907. C. T. Hays, Hannibal, Mo. One hundred twenty five dollars draft to my order will satisfy Smith and stop proceedings. Answer. Lightfoot."

"Sept. 16th, 1907. To Lightfoot, Prosecuting Attorney, Brazoria, Texas. Draft tomorrow. See letter. Telegram received after banking hours. C. T. Hays."

The letter referred to in the last telegram is as follows:

"Mr. Lightfoot, Prosecuting Attorney, Brazoria, Texas—Dear Sir: Confirming telegram of last night, I inclose New York exchange for $125 for liquidating the claim of Smith Bros. against Chas. Clayton and stopping prosecution against him.

"I am a cousin of Mr. Clayton. I want to say that this money has been raised for this purpose at considerable sacrifice. I therefore request of you and Smith Bros. that you make no mention to Mr. Clayton of this payment. And I would esteem it a special favor if Smith Bros. would make some attempt to collect from Mr. Clayton and forward me any collections they may be able to make.

"Thanking you for your courtesies in this matter, I remain, Yours truly C. T. Hays."

Smith Bros. allege that Charles Clayton owed them $125, which the draft was intended to pay; but Lightfoot falsely and fraudulently represented himself to be the prosecuting attorney of Brazoria county, obtained the $125, and converted it to his own use and benefit, thereby preventing them from collecting the debt Clayton owed. It

is not alleged that the prosecuting attorney of the county would have dismissed the prosecution of Clayton upon receipt of the $125; but negligence is alleged in the company in failing to deliver the telegrams to the parties intended and in concealing the fraud of Lightfoot in representing himself to be such prosecuting officer.

[1, 2] Hays sent the money, and sent it with a condition attached to it, even if it had reached the prosecuting attorney. This condition was that the prosecution be dismissed against Charles Clayton. Until that was done Smith Bros. had no claim on the money. It would not even have been subject to garnishment by them because Clayton is the man who owed them the debt, and this money was sent by Hays and belonged to him until delivered according to proposed contract by the prosecuting attorney. For that matter the condition attached to the delivery of the money was illegal and contrary to public policy, but that fact did not make it Smith Bros.' money. Hays may have had a cause of action against the company for failing to deliver his messages, and later when Lightfoot converted his money, but this could not have afforded appellees a cause of action. If Clayton owed them $125, that debt was not discharged, and no act of appellant has put them in a worse attitude than they were before Hays parted with his money. There never was anything Smith Bros. could have stood upon to recover this money so sent, because it was never intended they should have it until the condition attached was complied with, and this condition they could not in law cause to be complied with, because it was illegal and void.

Too often the criminal courts of this state are sought to be used as collecting agencies, the aggrieved creditor rushing to the prosecuting attorney and making complaint, but later significantly suggesting to the culprit or his relatives that he really believes there is yet some good in the man, and if his money is paid, he will be satisfied and will stop the prosecution. And it is well that people know that the criminal courts are for one purpose, and the civil courts for a very different purpose. It is not intended by this to intimate that appellees have indulged in this reprehensible practice, but the writer has met this trouble so often in the office of prosecuting attorney that he could not refrain from saying something about it; and the court very kindly permitted the same.

The briefs of the parties contain no authorities, but on the subject of fraud of telegraph agents we have found very interesting reading in the following: Usher v. W. U. Telegraph Co., 122 Mo. App. 98, 98 S. W. 84; W. U. Telegraph Co. v. Uvalde Nat. Bank, 97 Tex. 219, 77 S. W. 603, 65 L. R. A. 805, 1 Ann. Cas. 573; W. U. Telegraph Co. v. Schriver, 141 Fed. 538, 72 C. C. A. 596, 4 L. R. A. (N. S.) 678.

It is therefore our conclusion that appellees had no cause of action against appellant, and the judgment should be reversed, and judgment here rendered in favor of appellant; and it is so ordered.

Reversed and rendered.