## McCORNICK v. WESTERN UNION TEL. CO.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

### No. 824.

1. REMOVAL OF CAUSES—ADMISSION OF TERRITORY AS STATE.

The right to remove into the federal courts causes which were pending in the territorial courts of Utah at the time of its admission into the Union did not depend on the judiciary act of March 3, 1887, but rested entirely on the provisions of the enabling act, and of the state constitution adopted pursuant thereto, for the special purpose of removing into the federal courts causes pending in the territorial courts, when such courts should cease to exist. And while the constitution of Utah provides that causes of which the United States courts would not have had exclusive jurisdiction shall be removed only upon petition or motion made under and in accordance with the act or acts of congress of the United States, this does not mean that the application for removal must be made before pleading by the defendant, or at any specified time before trial.

2. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.

The provision in the Utah enabling act empowering the constitutional convention to provide by ordinance for the transfer of causes pending in the territorial courts to the proper state and federal courts, respectively, was not an unconstitutional delegation of legislative power by congress. The provision made for this purpose in the state constitution is, in any event, valid, as the constitution was accepted and ratified by the act of congress admitting the state.

3. TELEGRAPH COMPANIES.

While a telegraph company owes a duty to the person to whom a telegram is addressed, and to whom it is delivered to be acted upon, to exercise care that it shall be authentic and accurate, it is not liable to a stranger to the company and to the telegram merely because he has seen the telegram, and acted upon it to his injury.

In Error to the Circuit Court of the United States for the District of Utah.

On October 18, 1892, George L. Frink, manager of the Glencoe Mining Company of the territory of Utah, applied to the plaintiff, a banker of Salt Lake City, in said territory, with whom said mining company had an account, for a loan by way of overdrafts, to the amount of $7,500, which was declined, but with the statement that plaintiff would so loan such sum as one D. E. Soule, of New Milford, Conn., would authorize said Frink to draw for upon the said Soule. Thereafter, on the same day, said Soule, in the city of New York, delivered to defendant a message, signed by him, to be telegraphed to said George S. Frink at Salt Lake City, to whom it was addressed, of the following purport: "May draw twenty-five hundred dollars at sight." By some error or mistake in transmission, the message, when delivered to Frink in Salt Lake City by the defendant's messenger, purporting to come from, and to be signed with the name of, said D. E. Soule, read: "May draw seventy-five hundred dollars at sight." Thereupon said Frink made on the same day a sight draft in favor of McCornick & Co. upon said D. E. Soule for the sum of $7,500, and upon the delivery thereof to the plaintiff, and the exhibition to said plaintiff of said telegram as received by said Frink, the plaintiff advanced and loaned to said Frink, by placing the same to the credit of said mining company, the sum of $7,500. Soule paid on said draft $2,500, and no more, and the draft was protested. In the meantime the mining company had obtained from plaintiff $7,276.68 of such loan. Frink and said mining company are insolvent, and the plaintiff seeks in this action to recover of the defendant $4,776.68, as his damage because of the negligence and carelessness of defendant and its agents in the transmission and delivery of said telegram. The complaint was filed July 20, 1893, in the district court of the Third judicial

79 F.—29

district of the territory of Utah, county of Salt Lake, and the answer of, the defendant was filed in the same court September 23, 1893, and the cause was pending in that court when, on January 4, 1896, the state of Utah was admitted into the Union. On February 1, 1896, the defendant filed in the district court of the Third judicial district of the state of Utah, county of Salt Lake, its petition for the removal of this cause to the circuit court of the United States for the district of Utah, on the ground that the amount in dispute, exclusive of interest and costs, exceeded $2,000, and that defendant was a citizen and resident of the state of New York, and the plaintiff a citizen and resident of the state of Utah. Defendant filed at the same time a proper bond for the removal of said cause, and thereupon, on the 21st day of February, 1896, by the order of the judge of said state court, said cause was removed for trial to said circuit court of the United States for the district of Utah, which last-named court afterwards denied the plaintiff's motion to remand said cause to the state court. Afterwards the said cause came on for trial at a regular term of said United States circuit court, and at the close of the evidence, the jury, in obedience to the direction of the court, returned their verdict in favor of the defendant, and judgment was thereupon rendered in favor of the defendant for its costs.

Arthur Brown. (Henry P. Henderson and William H. King with him on brief), for plaintiff in error.

David Evans and Eleneious Smith (George H. Fearons, L. R. Rogers, and Joseph Dickson with them on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

1. The cause was properly removed to the United States circuit court. The right of removal in this case did not depend on the act of March 3, 1887, in relation to the removal of causes from the state to the federal courts, which is inapplicable to suits pending in the courts of a territory. Such right of removal rested entirely on the provision made by congress for the special purpose of removing into the federal courts such causes pending in the territorial courts of Utah, when such courts should cease to exist, on the admission of the new state, as might, conformably to the constitution of the United States, be removed to the federal courts for trial. By the act of congress enabling the people of Utah to form a constitution and state government, the convention provided for was empowered to provide by ordinance "for the transfer of actions, cases and proceedings, and such matters pending in the supreme or district courts of the territory of Utah, at the time of the admission of the said state into the Union, to such courts as shall be established under the constitution to be thus formed, or to the circuit or district court of the United States for the district of Utah, and no indictment, action or proceeding shall abate by reason of any change in the courts, but shall be proceeded with in the state or United States courts, according to the laws thereof respectively." Pursuant to this authority, the convention, in the seventh section of article 24 of the constitution of Utah, ordained:

"All actions, cases, proceedings and matters which shall be pending in the district courts of the territory of Utah, at the time of the admission of the

state into the Union, whereof the United States district or circuit courts might have had jurisdiction, had there been a state government at the commencement thereof respectively, shall be transferred to the proper United States circuit and district courts respectively; and all records, indictments and proceedings relating thereto, shall be transferred to the said United States courts. Provided, that no civil action, other than causes and proceedings of which the said United States courts shall have exclusive jurisdiction, shall be transferred to either of said United States courts, except upon motion or petition by one of the parties thereto, made under and in accordance with the act or acts of congress of the United States; and such motion not being made, all such cases shall be proceeded with in the proper state courts."

Under these provisions, civil actions pending in the territorial district courts when the state was admitted, of which the United States courts had not exclusive jurisdiction, would remain in the state courts, unless a party thereto should move or petition for the removal, and the motion or petition was to be made under and in accordance with the acts of congress. This means that the application and proceedings should, in form, conform to similar proceedings under the acts of congress, and show the jurisdictional facts which would warrant the assumption of jurisdiction by the federal court. It does not mean that the application for removal must be made before pleading by the defendant, or at any specified time before trial. The language used covers all cases so pending in the territorial courts "whereof the United States circuit or district courts might have had jurisdiction, had there been a state government at the time of the commencement thereof respectively." The provision should be so construed as to give effect both to the intention of congress and the convention. Koenigsberger v. Mining Co., 158 U. S. 41, 15 Sup. Ct. 751. To hold that no case pending in the courts of the territory of Utah could be removed, except such as came entirely under the removal act of 1887, is to hold that the congressional provision in the enabling act, and the provision in the Utah constitution, are alike futile and meaningless, and that nothing but the act of 1887 has any force in respect to the subject. It is argued that congress cannot delegate its legislative power to any other body, and therefore the provision in the Utah constitution is void. It may be admitted that congress may not delegate its general powers of legislation on subjects affecting the whole people. But it has never been doubted that congress may, in respect to any designated district or territory outside of all the states, and therefore within its absolute control, create a local legislative body, and invest it with legislative powers. This has been done in respect to all of the organized territories, although the power of congress remains complete over them, so that it can disorganize them, or abrogate any law passed by the local legislature, or make enactments for a territory as if it had no legislature. The constitutional convention of Utah was a governmental body, which congress could properly provide for, to aid in preparing for the change from territorial existence to statehood, and could properly invest it with authority to provide for all the details incident to such change. One of these unavoidable details was the proper distribution and placing of the causes depending in the territorial courts, which would go out of existence with the change. The argument, however, has

no foundation. The act of congress which admitted Utah as a state accepted and ratified its constitution, and invested all its provisions with all authority conferred by any act of congress.

2. The defendant telegraph company, by its contract with the sender of the telegram, made in consideration of payment for the service, was bound to him to transmit his message correctly, and would be liable to him for any damage he might sustain as the direct result of failure to perform such contract, except in so far as such liability had been lawfully limited by the terms of the contract. It also owed a duty to the person to whom the telegram was addressed, and to whom it was delivered by the telegraph company to be acted upon, to exercise care that the telegram so delivered should be authentic and accurate. The cases of May v. Telegraph Co., 112 Mass. 90, and Elwood v. Telegraph Co., 45 N. Y. 549, sustain the right of a person to whom a telegram is addressed and to whom it is delivered by the telegraph company, to recover for damage caused by negligence of the character indicated. But a telegraph company cannot be liable to a stranger to the company and to the telegram,—one to whom it has never delivered the message, and to whom it owes no duty whatever,—merely because he has seen the telegram, and acted upon it to his injury. Telegraph Co. v. Wood, 6 C. C. A. 432, 57 Fed. 471; Bank v. Ward, 100 U. S. 195. The direction to the jury was correct, and the judgment is affirmed.