# BARRUS v. WESTERN UNION TELEGRAPH CO.

No. 5765.   Decided November 20, 1936.   (62 P. [2d] 113.)

*Cluff & Cluff*, of Salt Lake City, for appellant.
*Badger, Rich & Rich*, of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal from an order dismissing the action after plaintiff's refusal to plead over upon demurrer sustained. The question, therefore, is: Was the demurrer to the complaint properly sustained? On June 6, 1935, the Beers Sheep Company, by G. A. Ransom, delivered to defendant at its office in Bannock, Idaho, a certain telegram, reading as follows:

"Chicago Flexible Shaft Co.
"Salt Lake City, Utah.
"Want three shearers will start on seventh five days work.
"Beers Sheep Co.
"G. A. Ransom."

The charge for sending and delivery was prepaid by Ransom. The message was delivered to the Chicago Flexible Shaft Company as follows:

"Want three shearers *on seventy five days work wire immediately.*" (Italics supplied.)

The italicized portion above constituted the change made in the message. The Chicago Flexible Shaft Company, a supplier of sheepshearing equipment, also rendered an accommodation service as a clearing house where shearers and sheep owners were brought together for employment. The Shaft Company showed the message as changed to the plaintiff and appellant herein, George Barrus, and to George Thornton and Ben Watkins. They all went to Bannock, Idaho,

expecting 75 days' work. They got 4½ days' work from the Beers Sheep Company. Barrus got other work in the vicinity for a total period of 14½ days, but claims he lost the opportunity to get 50½ days' work at $10 per day, or $605. The complaint sets out all of these facts.

A second and third cause of action were included in the complaint for the alleged losses incurred by Thornton and Watkins, which causes of action it is alleged were assigned to Barrus. The same point is involved in all three causes of action. No question is raised as to the assignability. The only question which is urged and argued in support of the demurrer is that Barrus has no cause of action against defendant because he was not the sendor nor the sendee of the message and that *he does not appear by the contents of the message to be a beneficiary of or interested in or affected thereby.* The italics state the matter on which the parties divide. Plaintiff claims that the defendant company was notified of the interest of a class, any one of which could be affected. Defendant contends that it could not ascertain from the message that any shearer would suffer damage because the relationship between shearers and the sendee was not disclosed.

The sender of a message has a right of action for damages due to an unauthorized change or delay or failure in delivery. Such action is grounded on a breach of contract. In this country, but not in England *(Playford* v. *United Kingdom Elec. Teleg. Co.,* L. R. IV Q. B. 706), the sendee has a cause of action for damages resulting from negligence in improperly transmitting or failure or delay in sending or delivering the message where the sendee is the person for whose benefit the message was sent. Since the sendee is not a party to the contract, many of the authorities hold that the company must have had notice of his interest at the time it accepted the message, either from the contents of the message or otherwise. *Frazier* v. *Western U. Tel. Co.,* 45 Or. 414, 78 P. 330, 67 L. R. A. 319, 2 Ann. Cas. 396; *Western U. Tel. Co.* v. *Wood* (C. C. A.) 57 F. 471, 21 L. R. A. 706. There appears to be no

valid reason why it should not be put on the broader ground of a duty owing by the public utility to the public. *Western Union Tel. Co.* v. *Mellon,* 96 Tenn. 66, 33 S. W. 725, and cases hereunder.

In the United States there has been included, in the class who may sue for lack of care, those who suffer damage by reason of the mistake, though neither sender nor sendee, provided they appear in the message as beneficiaries. By some authorities this is placed on the ground that the person damaged was a revealed beneficiary of the contract. *Sherrill* v. *Western U. Tel. Co.,* 109 N.C. 527, 14 S. E. 94. Other cases place it on the ground of a public duty which the telegraph company owes to these beneficiaries as part of the public. *Western Union Tel. Co.* v. *Mellon,* supra; Hale on Damages, 266; Thompson on Law of Electricity, § 427; *Butler* v. *Western Union Tel. Co.,* 62 S. C. 222, 40 S. E. 162, 89 Am. St. Rep. 893.

We are not so much concerned with the doctrine that one whose beneficial interest is disclosed by the message may sue, though neither sendor nor sendee, nor with the ground upon which it is placed, but rather with the question as to whether the interest of the plaintiff was in this case sufficiently disclosed to the company. Did the fact that it could not be ascertained from the message whether the shearers were to be supplied by the Shaft Company as its employees (in which case the loss would fall on that company), or whether it was only a request to procure, for the sender, shearers who would work for such sender on their own behalf (in which case the loss would fall on the shearers), fail to sufficiently disclose any interest in such shearers who might be sent on the work? That question suggests an exploration into the preliminary question of why the liability of the company is limited to such persons mentioned in the message whose interest in the message is disclosed thereby, rather than to any one who has been damaged by the negligence of the company. This exploration will reveal the reason for requiring the interest of such third person

to be disclosed to the defendant, and, knowing the reason therefor, we may determine whether the message in the instant case sufficiently discloses the interest of the plaintiff and the other two shearers.

In the case of *McCornick* v. *Western Union Tel. Co.*, 79 F. 449, 452, 25 C. C. A. 35, 49 U. S. App. 116, 38 L. R. A. 684, a message was sent by Soule to Frink stating that the latter might draw on the former for $2,500. By an error the amount was changed in the message to $7,500. Frink showed the message as changed to McCornick, a banker, who had previously told Frink that he would loan him $7,500 if Soule would authorize him (Frink) to draw upon said Soule. McCornick loaned the $7,500 to Frink. The draft was protested because Soule refused to pay more than $2,500. McCornick sued the telegraph company. The court said:

"But a telegraph company cannot be liable to a stranger to the company and to the telegram,—one to whom it has never delivered the message, and *to whom it owes no duty whatever*,—merely because he has seen the telegram, and acted upon it to his injury." (Italics supplied.)

The court assumed the company owed no duty to McCornick or to any one not the sender, sendee, or some one whose interest appeared in the message.

In the case of *Western Union Tel. Co.* v. *Schriver* (C.C.A.) 141 F. 538, 539, 4 L. R. A. (N.S.) 678, the court followed the McCornick Case and held that a message sent by Barnes, but signed in the name of the Bank of Denison, without authorization, to the Commercial Bank of Britt, stating, "We will honor Barnes' draft for eighty-nine hundred seventy-two dollars," and which was for the benefit of Schriver, who was to get the money for the sale of cattle to Barnes, did not give Schriver a right of action against the telegraph company, granting the receiving agent of the telegraph company was negligent in not ascertaining the authority of Barnes. The court held that, while the telegram was for the benefit of Schriver, the company had no notice of his interest. Judge Sanborn said,

"A duty of care owing by the party who occasions the loss to him who sustains it is an indispensable element of actionable negligence."

The real question is as to whom the telegraph company owes a debt. The very able debate between Judge Cardozo and Judge Andrews in the case of *Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 162 N. E. 99, 100, 59 A. L. R. 1253, presents the two theories of liability. In that case the plaintiff was standing on a platform of the railroad company ready to entrain for Rockaway. A train bound for another place stopped at the station. A man attempted to board this train while it was moving out. A guard on the platform pushed him on from behind, dislodging a package which, unknown to the guard, contained fireworks. The fireworks were exploded by the fall. The shock threw down some scales at the other end of the platform many feet away and struck the plaintiff, causing injuries for which she sued the railroad. Assuming negligence on the part of the guard, was the railroad liable? Judge Cardozo said "No"; Judge Andrews "Yes." Judge Andrews took the view that as long as the injuries were the proximate result of the negligence—a natural and continuous sequence, a direct connection between the negligent act and final consequence—the defendant was liable: This is what is known as the "but-for" doctrine. But for the negligence, the consequence would not have happened as a proximate result. Judge Cardozo took the view which prevailed, that the consequence of the negligence, with which the negligent doer is to be charged, must have been such that the risk of injury which such negligent act might cause must be within the "range of apprehension." "The orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." This is ordinarily expressed as that which is "reasonably foreseeable as a natural and probable result." The guard, not knowing what was in the package, could not have foreseen that his pushing the passenger would cause the explosion. He could foresee that pushing the passenger might dislodge the package. He could have foreseen that a

falling package of explosives might explode and that explosions through a cause-effect chain may have various unexpected consequences. All that was foreseeable. But that helping a passenger on a train by a push would dislodge a newspaper package *in which there were explosives* was not foreseeable, because he had no reason to anticipate that a passenger would be carrying explosives. It was a hazard not "apparent to the eye of ordinary vigilance." The duty of the railroad to the plaintiff to protect her from invasion of her personal security was limited by the "risk reasonably to be perceived." The risk to the plaintiff was not "within the range of apprehension," therefore the duty not to negligently push the passenger was not a duty in relation to the plaintiff on the other end of the platform.

This gives us the clue to the philosophy underlying the McCornick and Schriver Cases. Said Judge Sanborn in the latter case: ■

"The limit of the doctrine relating to actionable negligence is that the person occasioning the loss must owe a duty, arising from contract or otherwise, to a person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business is plainly necessary to restrain the remedy from being pushed to an impracticable extreme."

### And again:

"One who makes a false representation owes no duty of care to tell the truth to those to whom he does not communicate it, to whom he does not anticipate that it will be communicated, and to whom a person of ordinary prudence in his situation would not have anticipated that it would be conveyed. The message was directed to the Commercial Bank of Britt. It was a private communication. * * * The plaintiffs were not mentioned in it, *and it contained nothing from which a person of reasonable prudence could have anticipated that it would be communicated to them.*" (Italics supplied.)

It may very well be argued that it might be reasonably anticipated by the telegraph company that the message to the bank was for the purpose of serving a customer and would be exhibited to him. But it has generally been held

that, where one other than the sender is interested in the message but his interest is not disclosed, or the company has no knowledge of it, no action on his part lies. *Western Union Tel. Co.* v. *Kirkpatrick,* 76 Tex. 217, 13 S. W. 70, 18 Am. St. Rep. 37 (message addressed to a husband requesting him to bring "Ferdinand" to the latter's father who was very low—the wife not being mentioned, although she was a daughter of the sick man. Held, she had no cause of action) ; *Western Union Tel. Co.* v. *Carter,* 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826 (message: "N. B. Garsuch is dead. Answer," addressed to the husband of the daughter of the deceased. The daughter sued. Not being named in the message, the telegraph company was not chargeable with notice of the relationship between wife of addressee and person named in the message) ; *Morrow* v. *Western Union Tel. Co.,* 107 Ky. 517, 54 S. W. 853. The upshot of the whole matter is that the company must be able from knowledge in its possession reasonably to anticipate the consequences of any mistake or delay caused by its negligence.

Now we may apply the above principles to the instant case. The Telegraph Company was not liable to every one who might have been misled to his damage because of the error. While its duty was a public one, it owed no duty to the world at large. The limit of its duty was as to those of the public it knew or could reasonably anticipate from the contents of the message would be affected by it. The message plainly revealed some one in the class of shearers would be affected by the message. That such persons would be affected was within the reasonable prevision of the company. It could have been foreseen and reasonably anticipated as the probable effect of a mistake that some particular shearers would be affected. Was it necessary that the defendant know specifically which shearers? We think not. The knowledge that some shearers would be likely to be affected carves out from the world in general the limited class toward which the company owes the duty of care. It was plain from the face of the message that the contents

were to be transmitted to some particular shearers and that any error would be carried through to them. The message clearly marked out the reasonable prevision which the company must exercise as to consequences which would ensue. Not any one who would be injured by reading the message would have an action. Had the wife of one of the chosen shearers incurred a family indebtedness on a purchase on the strength of 75 days' work, she could not have recovered, being outside of the group which the company could reasonably anticipate would be affected, but not any one who was a shearer. Here the duty was owing to a class. Any one in the class damaged might sue. *Bank of Montreal* v. *Thayer* (C. C.) 7 F. 622, 2 McCrary, 1.

More difficult is the question raised by the contention that the message does not reveal the relationship between the Chicago Flexible Shaft Company, the addressee, and the shearers. Says defendant: If the addressee had the shearers as its employees, then it and not the plaintiff has suffered the damages. We do not deem it necessary that this relationship be revealed. The test is: Can the dispatching company, from the knowledge it has, reasonably anticipate the consequences of error. It is this condition which makes necessary that it know the persons who may have a beneficial interest in the message. Otherwise, it cannot anticipate any damage or the nature thereof as it may fall on them. This makes the difference between the McCornick and Schriver Cases and the case at bar. It may reasonably anticipate that either the shearers or the sendee or both may be injured by a mistake. It knows that if shearers are sent on a false trip they or the sendee, if it was their employer, will be injured. It is apprised of the nature of the transaction, and certainly of the nature of the damage consequent on a mistake. Just because it cannot gather from the message just what the legal relationship is, if any, between sendee and the shearers, and thus upon whom of the two the damage will ultimately alight, cannot affect the anterior fact upon which depends the ability reasonably to

anticipate the consequences of error which in turn sets the limits of its liability.

In *Western Union Tel. Co.* v. *Adams*, 75 Tex. 531, 12 S. W. 857, 859, 6 L. R. A. 844, 16 Am. St. Rep. 920, it was held that the telegraph company was not exonerated from liability because it did not appear in the accepted message that "Clara" was the sister of "Rufe" who was dying. Clara, or in Texas her husband, could sue for mental anguished suffered by her for delay in delivering the message. In *Western Union Tel. Co.* v. *Morrison* (Tex. Civ. App.) 33 S. W. 1025, 1027, it was said:

"Being notified by the dispatch that a trade was pending, it would be affected with notice of all the facts that inquiry would have discovered."

Where the company knows that a person or a class is to be affected by the message, it is in position to inquire as to the relationship between the addressee and the person or class named. Said the court in *Western Union Tel. Co.* v. *Adams*, supra:

"It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed."

The company could not be prejudiced by failure to disclose it. It had reason to know that shearers would be affected by the error and that it therefore, in all likelihood, owed a duty toward them. It also knew that the addressee might be affected and that it owed a duty toward it. This and its liability to the sender definitely marked the orbit of its relationship to those in regard to whom the message raised a duty. Because it would not know whether it might be liable to only one, or all, does not affect the anterior fact which marks the limit of its liability. That it finds itself liable to the shearers instead of to the sendee simply means that certainty has eliminated one of the two classes of beneficiaries revealed by the message. Had the shearers been employed

by the sender, the shearers would have been eliminated as persons entitled to sue. As it turned out, the shearers worked on their own behalf and this eliminated the sendee as one of two persons upon whom the injury might possibly fall. But the limits of the company's liability were defined by the message as injury to the sendee or the shearers. That was sufficient because it brought the consequences of error within a disclosed orbit of "anticipability."

The demurrer was improperly sustained on the grounds that the defendant had no duty toward the plaintiff. The judgment of the lower court is reversed, with instructions to set aside the order dismissing the complaint and the order sustaining the demurrer, without prejudice to further consider the demurrer on other grounds, if any, not herein urged. Costs to appellant.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.