## PENNOCK v. NEWHOUSE REALTY CO.

No. 6053.   Decided August 9, 1939.   (93 P. 2d 482.)

*Harley W. Gustin* and *E. F. Richards,* both of Salt Lake City, for appellant.

*Horace C. Beck* and *H. A. Smith,* both of Salt Lake City, for respondent.

PRATT, Justice.

James E. Pennock recovered damages against the New-

house Realty Company for burns received from hot grease. The defendant company appealed. For a number of years Mr. Pennock had been exterminating insects for the defendant company in the kitchen of their hotel. The gist of his action lies in the following quotations taken from his complaint:

"4. * * * that the said kitchen at said time and place was equipped with a tile floor which was maintained by the employees and servants of the defendant under the supervision and direction of the defendant in a smooth and highly polished condition; that the said servants and employees under the supervision and direction of the said defendant during the time aforesaid carried hot grease from the said range in said iron pot to the said can on said stand; *that at said time and place the.servants and employees of the said defendant* while carrying the said hot grease in the above described iron pot and pouring the said hot grease into the said can resting on the said stand, *negligently and carelessly caused the said hot grease to spill, splash, drip, and fall upon the said floor between the east end of said small table and said range and the said stand causing said tile floor to become slick and slippery due to the said spilling of said hot grease; that* at approximately the time aforesaid this plaintiff left the said pantry to go to the said cold meat room in said kitchen and as this plaintiff, while using due care, caution, and circumspection for his own safety reached a place in said passageway midway between the said range and said small table and said stand and can which was at said time filled with scalding hot grease, *slipped on the said tile floor and said grease thereon causing this plaintiff* to fall thereon with great force and violence; that this plaintiff further alleges that while he was in the process of falling to the said floor, he fell into and against, on and upon said can of hot grease causing the same to tip over, splash, spill, and run over, on and upon his body, burning his head, shoulders, arms, hips, legs, ankles, and feet with second and third degree burns causing this plaintiff great and excruciating and indescribable pain, suffering, and injury all to plaintiff's damage as hereinafter set out." (Italics added.)

"5. That the said defendant by the exercise of due care, caution, and circumspection, knew, or should have known of the highly dangerous condition of said tile floor caused by the spilling of said hot grease, and the dangerous location of said hot grease on said stand, and should have known the said stand was unguarded and unprotected and that the said can or cans containing the said hot grease were not covered and that said tile floor was kept and maintained in a highly polished and smooth condition.

"6. That the negligent and careless acts on the part of the defendant aforesaid were the proximate cause of this plaintiff's injuries, which negligent and careless acts are more particularly set out as follows, to wit:

"(a) That the defendant was negligent and careless in maintaining the said tile floor in a smooth and highly polished condition and maintaining said stand and said hot oil in said cans in said passageway and knowing the danger thereof.

"(b) That the defendant was negligent and careless in failing and omitting to place any guards, rails, signs, or other warning or protection of any kind, nature, or description around, by, or near the said stand and said cans containing said hot grease and allowing the same to remain unguarded and unprotected, knowing that the said grease in said cans was scalding hot.

"(c) That the defendant was negligent and careless in allowing the tops of said cans containing the said hot grease to remain off, and in wholly failing and omitting to provide covers for the said cans, and in failing and omitting to fasten the said cans or said stand to the wall or floor or in any way fastening the same so that the said cans and stand could not be easily tipped over.

"(d) That the defendant was negligent and careless in wholly failing and omitting to remove the grease that had spilled, splashed, sprayed, or fallen to the floor while the said hot grease was being carried, transferred, and poured from the said iron kettle to the said can.

"(e) That the defendant was negligent and careless in allowing the hot grease to spill, splash, spray, or fall to the said tile floor and remain thereon.

"(f) That the defendant was negligent and careless in wholly failing and omitting to properly light the said kitchen and particularly said passageway of said kitchen where this plaintiff fell."

To this complaint defendant entered a special demurrer on the grounds of uncertainty. The demurrer was overruled. This ruling is covered by defendant's assignments of error.

We are of the opinion that the demurrer should have been sustained. If guards, rails, signs, can-covers, or different lighting were essential to the careful conduct of the kitchen, then there must have been in that kitchen a hazardous condition against injury from which such equipment should have afforded protection. By "hazardous condition" we do

not mean merely the presence of hot grease. The mere possession of such grease does not impose upon the one in possession the duty of affording others protection against injury from contact with it. If this were not so, the possession of that grease in the center of a ten acre pasture would call for protective equipment for the protection of a passerby outside the pasture. There must be some circumstances coupled with the possession that brings the passerby in proximity to a dangerous situation. But distance from the path taken by the passer-by, though an important element, is not the sole element which coupled with possession of the grease imposes upon the one in possession the duty of affording protection to the passer-by. In other words, the duty does not arise at any fixed point measured in feet, inches, or other unit of measure from the path of the passer-by. The distance is governed by the circumstances of each case such as the narrowness of the passageway, the visibility, the protrusion of the grease container into the pathway—any number of assumptions might be the subject of our indulgence. But these governing circumstances must be of a foreseeable nature, and not of an unusual or unexpected character. Thus, assuming the hot grease in proximity to the pathway but so situated that there was very little or no danger in passing it then, if someone deliberately or carelessly left a wire across the path, or dropped oil upon it, the one in possession of the grease would not have violated a duty of protection to the passer-by who stumbled over the wire or slipped on the oil and fell into the hot grease container, on any theory that had the container been properly guarded the nature of the resultant injury might have been different. The proximate cause of the injury under such an assumption would have been the wire or the oil on the pathway. However, a different rule might apply if the circumstances were such that a wire across the path or oil upon it was a common occurrence or was an anticipated occurrence. In such a case the one in possession of the grease might be under the duty of anticipating the occurrence, and of affording protection against injury from it.

One more thought before returning to the pleadings in this case: To merely allege negligence in a failure to afford protection from hot grease does not by inference supply the "hazardous condition." In other words, to ■ charge one only with carelessness and negligence in failing to afford protection against hot grease does not state facts sufficient to place upon his shoulders that duty. He may be the one who keeps the grease in the center of his ten acre pasture.

Now to the pleadings: The italicized lines of the quotation from the pleadings indicate not a common occurrence, but the unusual circumstance. Had the lower court limited his instructions to this theory of the case, we would be inclined to let the verdict stand. But he instructed ■ upon the lack of protective equipment about the hot grease. He followed his theory of the complaint and committed error in so instructing. Thus we are compelled to examine the pleadings to see if a causal connection is clearly shown between this alleged failure and the injury. We find considerable uncertainty upon this point. It may be illustrated by a few questions. What was the hazardous condition? Was it an overcrowded kitchen? Was it a narrow passageway? Was the slippery condition of the floor a common occurrence? What was it plaintiff could not see for lack of proper lights—the grease, the can, the passageway—what? Plaintiff's pleadings do not answer any one of these questions. The nearest he comes to it is paragraph 5 (quoted). There he refers specifically to the careless spilling of the grease, which we have shown by illustration is not alleged in the class of common occurrences or anticipated occurrences, imposing upon the employer the duty of anticipating such a result.

The defendant is entitled to know what plaintiff has in mind. A defense to an incident of carelessness of an employee may be entirely different from a defense to a failure to afford protection against a dangerous condition of the premises.

The opinion we have expressed above necessitates a vacation of the judgment, and a remand of the case, with directions that the demurrer be sustained, with leave to counsel for the plaintiff to amend his pleadings if he desires. We say this in spite of the fact that we recognize this complaint might also have been construed that the allegations of negligence in the lack of protective equipment were mere surplusage. It eliminates the necessity of discussing many of the other assignments of error, as they will probably not occur again; but there are one or two that deserve a brief cautionary statement from us.

We do not agree with defendant's objection to the following testimony on the ground that it was merely an opinion:

"Q. Now Mr. Chugg, did any oil or grease spill on the floor where you rendered it that evening?" A. Yes, I believe there was; naturally, there would be a few drippings from a can where you are pouring it."

Mr. Chugg, however, testified that, as he left the kitchen that evening, he called out to the others to be careful as he had just poured the grease and they might fall. Mr. Chugg's answer to the question impresses us as a matter of uncertainty in his own mind which uncertainty he tries to overcome by reasoning. Such an uncertainty is not a ground for rejecting his testimony. It may be, in the mind of the jury, the measure of his credibility.

Another objection deserving of comment is that to the testimony of Dr. Openshaw, on the ground that it was speculative. We quote one of the questions and two of the answers of the doctor:

"Q. Tell the court and jury just what his physical condition was, as you observed it." (Referring to plaintiff.) A. We of the medical profession regard any patient with one quarter of the surface of the body burned as a seriously ill patient."

The danger of such an answer as this may be illustrated merely by adding the words "whether he is or not," to the end of the answer. If such an answer is permitted, the doc-

tor may, by such an unimpeachable statement, convey to the jury the thought that defendant was seriously ill, where, as a matter of fact, the defendant may be an exception to the general rule. It is an indirect answer fraught with serious potentialities.

After objections, and a ruling by the lower court, the doctor continued:

"Anyone who has a burn which involves as much of the extent of the body as this man had, develops a toxic protein substance under the skin, which so benumbs the vital centers of the body that it is liable, at any time, to produce a blocking of the kidneys, a blocking of the sensory nervous system which governs the fascia motor system, producing a severe grade of toxemia and shock, which is liable to result in the patient's death."

This answer is subject to the same objection as the other. To state what generally happens in such cases leaves it entirely to the speculation of the jury as to whether or not it is happening to plaintiff. Plaintiff is entitled to have the jury consider, as part of the measure of his damages, that which is reasonably expected to follow his injured condition; but its proof does not lie in what may have happened to others equally burnt. The doctor's experience in other cases and his learning acquired from other members of his profession may qualify him to answer, but his answer should be confined to the symptoms found in plaintiff. These errors may not be fatal to the case by reason of other testimony introduced, but they are well worth considering for future purposes.

The judgment of the lower court is vacated and set aside, and the case remanded with directions to the lower court to sustain the demurrer, and permit counsel for plaintiff to amend if he so desires. Costs to appellant.

MOFFAT, Chief Justice (concurring).

Whether the complaint is sufficiently bad to require that the special demurrer should have been sustained, whether there are parts of the complaint regarded as surplusage,

upon which the court should not have instructed, or, whether the answers to questions are so general as to require the sustaining of an objection or motion to strike; all seem to agree that there is error. The line between error and reversible error may not be easily found.

I am of the opinion the judgment should be reversed and accordingly concur in that order.

LARSON, Justice (concurring).

I concur, but for clarity desire to state my reasons. A close analysis of the complaint reveals two sets or types of negligence referred to in the complaint with their accompanying results and effects on plaintiff and his cause of action. There is first a description of the stage upon which the action took place, in which it is sought to show that some of the arrangements in the kitchen, the set-up there, were such as to be inherently dangerous, or the subject of potential injury, in case of even a slight disorder or accident. Such was the placing of a can of hot grease on a stand with a small surface so close to the place where people must walk, and from which it could easily be dislodged. So also the failure to have guards or rails around the can, or fastening it down to prevent dislodgment or upsetting, and the absence of a cover on the can. These things are alleged, not in and of themselves as causes of plaintiff's fall but as a dangerous situation not properly safeguarded against, and which conditions, known to defendants, were proximate causes of the nature and extent of plaintiff's injuries. That maintenance of such conditions, with their potency for injury and harm, was negligence on the part of defendants, which negligence was a contributing proximate cause of the injuries suffered by plaintiff.

The second group of negligent acts are those of a more active and direct nature, to wit, the maintaining of a slick and highly polished floor, the spilling of grease on the floor in the only passageway, allowing the grease to remain thereon, and the failure to provide proper lights in the passage-

way. These are alleged as the active, inducing or initiating causes of the fall, they are the things which immediately caused plaintiff to slip and fall, as a result of which fall he sustained the injuries upon which his cause of action is predicated. They were the direct and proximate causes of the fall, of which plaintiff's injuries were the direct and proximate result. These elements constitute the negligence without which plaintiff could not maintain this action, even though all the first group were proved. The action could be maintained however on the second group even though the first group were neither alleged nor proved.

Then plaintiff sets up the combination of these groups, that is, their working in unison to produce the injuries he sustained. I think plaintiff's attempts to allege that because of defendant's negligence in not sufficiently lighting the passageway, in keeping the floor slick and highly polished, in spilling and allowing grease to remain on the passageway floor, he slipped and fell; that in so falling he upset the can of hot grease and was badly burned; that had defendants not maintained the unguarded, uncovered, unfastened can of hot grease at that narrow point in the darkened, slick passageway the resultant injury of a fall there would have been much less; and therefore defendant's negligence in both respects were the proximate causes of his injuries—one as the initiating cause of the fall, and the other as the primary damage creating element. A repleading and rearrangement of the allegations would have clarified the issues and prevented the error in instructions.

The complaint is inartfully drawn because in describing the whole set-up and arrangement of the kitchen there is no allegation that there was anything neligent or dangerous about it, then alleges that defendants *"negligently and carelessly caused the grease to spill  *  *  *  and the floor to become slick and slippery  *  *  *."* thereby causing him to fall and the grease to spill upon him; and then alleges "that the *careless and negligent* acts on the part of the defendant *aforesaid* were the proximate cause of plaintiff's

injuries." Then follows an enumerating of other acts which are then for the first time called "negligent and careless acts." To name *after* matters which were not set-up among the *aforesaid* negligent and careless acts "which were the proximate cause of plaintiff's injuries," may be confusing and inartful, but a careful analysis of the allegations reveals the intent and meaning thereof, even though a better and more logical arrangement and order among the allegations would have improved the form of the pleading. The mere characterization of an act as "careless" or "negligence" is not an allegation of fact, but merely the pleader's characterization or description of an act. If the setting forth of the act itself characterizes it as negligently done, the use of a descriptive word, while helpful to some readers, does not add to the legal effect or import of the act. Ofttimes it is easier to characterize an act as "carelessly and negligently done" than it is to put into other words a description which would so show, but once an act is so pleaded as to convey to the mind a clear impression that it was done in a negligent manner, the failure to use the word "negligent" is not fatal, especially after trial. Of course, it does not suffice to simply plead an act as committed, and argue that upon trial the proof will show it was negligently done. The pleading should show, either from the inherent nature of the act itself, or by the manner of its performance, that such doing thereof was negligent and careless. We need not consider what the effect would be had timely objection been raised below that the matters in paragraph (6) of the complaint were surplusage and not alleged as proximate causes of the injuries because before they were set out as negligent acts, the complaint enumerated certain other acts and then alleged that *the negligent acts aforesaid* were the proximate cause of plaintiff's injuries, because that objection was not made, and defendants treated paragraph 6 as though its provisions were allegations of proximate causes.

Defendant's special demurrer was directed at these allegations, not as surplusage but as uncertain as to how they were

the proximate cause of the accident. As indicated above the accident consists of two elements, the fall, and the injuries sustained thereby. Some of these elements were the proximate cause of plaintiff's fall, and others were the proximate cause of the nature and extent of the injury sustained. The two of them constitute the accident, or the basis of plaintiff's cause of action. Bearing this in mind we cannot say overruling the special demurrer is reversible error. A special demurrer for uncertainty is much like a "motion to make more certain and definite." Although it should have been granted, the denial thereof, after issue joined and trial had often does not assume the proportions of reversible error.

It would have been better as a matter of practice had the court sustained the special demurrer and required counsel to replead and rearrange his allegations to clarify and simplify the issues. When a pleading is timely attacked by demurrer, it should be construed against the pleader. The best pleading, the most definite and concise of which the facts reasonably admit, is none too good. Counsel is not responsible for and has no control over the facts, but the pleadings are his offspring, sired by his knowledge and damed by his ingenuity, and they should be his pride and joy. It is far better that such offspring die aborning than to live until charged with the duty of supporting a judgment, and then die an ignominious death upon the gallows of the appellate court.

But I concur in the holding that the judgment must be reversed. The cause was not submitted to the jury upon the theory of the pleadings as outlined above. By instruction No. 1, the court told the jury that plaintiff alleged and set up six separate and distinct acts of negligence, and enumerated them, "(a) in maintaining a stand with hot oil in cans by the passageway. (b) in failing to guard the place where the grease was. (c) in failing to keep the grease cans covered. (d) (e) (f) * * *."

By instruction No. 4 the jury was told that if "defendant was negligent in any one of the particulars" above set out and "said negligence was the proximate cause of the injury"

plaintiff was entitled to recover. It is elemental and fundamental that a party can only recover upon the theory of liability which he has alleged in his pleadings. Yet under this instruction if the jury found that a can of hot grease was maintained on a stand near the passageway, or even that the lid was left off a can of hot grease, and that plaintiff's injuries (burns) were the proximate result of contact with the grease plaintiff should recover, regardless of how he came into contact with the grease. Under the instruction plaintiff could recover had he fainted and fallen into the grease, or had he when walking along the passageway walked into the grease, or had he attempted to crawl upon the stand and upset the grease. It may be that in either of such situations plaintiff could state an action for recovery. But he did not attempt to do so, or assert, allege or rely upon any such theory of liability. Instructions should be so framed as to make clear, and confine the jury to, the basis of liability alleged in the complaint and permit recovery on no other theory. This instruction went far beyond the theory of the action or the issue in the pleading as to the basis of liability. No useful purpose would be subserved by a dissertation upon the matter. I merely indicate this much to avoid a repetition of such faulty instruction upon a retrial.

For this reason I concur in the order reversing the judgment. I reserve from my concurrence, however, what is said as to the testimony of Dr. Openshaw.

WOLFE, Justice (dissenting).

I think that while the complaint may be inartfully drawn, and perhaps too generously assigns every omission conceivable under the circumstances as negligence, it sufficiently puts the defendant on notice of what it intended to charge as proximate causes of the injury. The complaint is good even tested by the rules laid down in the prevailing opinion. The complaint in this case did not allege mere possession of a scalding pot of grease. It alleges with great particularity the placing of the hot grease in such position

that it created a condition hazardous to this plaintiff, toward whom defendant owed a duty not to expose him to such condition. It alleges "circumstances coupled with possession that brings the passerby in proximity to the dangerous situation." The first part of paragraph four of the complaint, not quoted in the prevailing opinion, sets out in detail the location of the kitchen equipment and avers the necessity for plaintiff to pass through a passageway five feet wide on one side of which protruded two feet into said passageway a stand 18 inches high with the hot grease pot upon it. I cannot see why a description of the stage onto which plaintiff rightfully entered does not sufficiently show or tend to show a hazardous condition. Must the passageway be described by some word as "narrow" or "in close proximity to passersby" to effect a description of a hazardous condition? It has been my impression that if the accurate facts were set up the deductions or conclusions which different persons might take from them was unnecessary. If I describe a tree as two feet through, it would hardly be necessary to add that it was a thick or a thin tree. Those are comparative terms. In this case the jury should be given the right to decide whether the condition of a hot grease pot standing by a three foot passageway was a hazardous condition. It may be admitted that a mere charge of failure to afford protection does not supply the negligence or the hazardous condition, but the whole fact configuration was here set out in detail.

Certainly there should be no doubt that a grease pot so placed might be knocked over by a passerby, even without slipping. Scalding water, hot grease, or boiling tar, although common substances, are fraught with a high degree of possibility for harm. Their very nature requires a high degree of care in handling and placement toward others rightfully on the premises. They may not be required to be kept in the middle of a ten acre lot, but certainly the circumstance of placing a can of hot grease on a stool in a passageway where plaintiff not only had a right but was required by his work

to go, did not require a high degree of foresight as to what might happen if he should chance to dislodge it, nor a high degree of foresight that in such a passageway he might dislodge it. The consequences were of a "foreseeable nature and not of an unusual or unexpected character." The books contain literally hundreds of cases where defendants have been held to accountability for consequences less foreseeable. So it is not my intention to discuss the nature of foreseeability. A good discussion of it may be found in the famous debate between Justices Cardozo and Andrews of the Court of Appeals of New York, contained in the case of *Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 162 N. E. 99, 100, 59 A. L. R. 1253. This court commented on the tests laid down in said case and made application thereof in the case of *Barrus* v. *Western Union Tel. Co.*, 90 Utah 391, 62 P. 2d 113. The consequence of the alleged negligence of permitting the hazardous condition with which the negligent doer is in this case sought to be charged was within the "range of apprehension."

Certainly in this case the plaintiff has assigned, as he well may, two major acts of negligence. The first is the placing of the hot grease in a position where a passerby may encounter it. It is for the jury to say whether the placing of a substance so highly capable of doing great harm did or did not amount to the creation of a hazardous condition. The other act of negligence was the spilling of grease on the floor. The two acts cooperated to cause the result. Subsidiary acts of negligence after creating the hazardous condition were the failure to guard the passerby against it; failure to furnish light enough to permit him to see the spilled grease, the lights being sufficient except for that purpose; failure to place a fixed lid on the can or affix the can to the table. It may be primary negligence to park a car on a very steep hill, but once having done it it is added negligence to leave it out of gear or with the front wheels not crooked toward the curb. We have numerous situations like that in the law.

The opinion asks a few rhetorical questions to illustrate how uncertain are the allegations regarding the hazardous condition. Was it the overcrowded kitchen, the narrow passageway, the slippery condition of the floor, lack of proper lights, the grease, the can, the passageway, what? I can hardly believe that my able associate who wrote the opinion, nor the astute counsel for the defendant, had such difficulty in determining the hazardous condition. By asking questions all around the obvious import of the pleading, the illusion of difficulty in picking out the thing relied on may be created, but no one should have a moment's hesitation in answering that the complaint alleged as one of the acts of negligence the placing of the pot of hot grease on a low table in a passageway where people were required to go so as to constitute a hazard. Paragraph five of the complaint in words mentions "the dangerous location of said hot grease on said stand." It is not the passageway, nor the hot grease, nor the lights alone, but a combination. A bandsaw or a passageway may not in themselves be hazardous, but a rapidly revolving bandsaw, unprotected and near the passageway, most likely would be.

Concluding that the complaint does specify the hazardous condition and that it may properly assign not only the hazardous condition and the spilling of grease as negligence, the combination of which resulted in plaintiff's injury, but also the subsidiary or secondary negligence in not protecting against the hazardous condition, there were sufficient allegations in the complaint to permit evidence of all of these assigned acts of omission and commission charged as negligence. If there was evidence from which the jury could conclude that the injury was caused by any of them, either as the initiator of the plaintiff's career of mishap or as an intermediate cooperating cause, the judge was not in error in instructing on the same.

After reading the complaint, the evidence, and the court's opinion, I gain the impression that we have strained to find error in this record. The members of this court as at present

constituted, have all sat on the trial bench. All know the pitfalls which confront a trial judge, the human factors involved in a trial, and the great chance for error in rulings necessarily peremptorily made. We should not strain to find error. A common sense reading of the complaint, giving it the meaning its import plainly carries, presents no difficulty or uncertainty as to the acts or omissions assigned as negligence. The evidence presents ample justification for a verdict in favor of the plaintiff who, going about his business, was seriously injured by the upsetting of a can of hot grease which, judged by his very act of hitting it, must have been accessible to collision with it. It naturally occurs to any thoughtful person that such substances so capable of inflicting frightful injuries should be placed far enough away from a passageway or so protected that there would be little likelihood of any contact.

The strictures leveled against the answers of Dr. Openshaw are supertechnical and of a sort of which any record of human testimony would furnish numerous examples. To contend, as has the opinion, that this plaintiff with one quarter of the surface of his body burned, might be an exception to the doctor's observation that any one so burned would be regarded as a seriously ill person is catching at straws. Giving such weight in an opinion to such unsubstantial contentions will serve to encourage litigants who have received substantial justice in the trial court to take a last chance with the appellate court. While the answers of Dr. Openshaw considered in the opinion were not as direct as might be desired, their common sense meaning was to say that plaintiff was seriously ill and that he had developed a toxic protein substance which might have been serious enough to result in death. The court might have done better to strike them and require a direct rather than an implied answer, but the failure to strike is not prejudicial error. I think the prevailing opinion admits this, but its admonitions attach to the answer an importance far beyond its import. It is not "fraught with serious potentialities for danger."

Some latitude for differences in habits of witnesses must be allowed; otherwise the witness would have to be furnished with forms for answering. Defendant had ample opportunity to require the doctor to explain his answers on cross-examination.

Trials of cases are serious judicial inquiries the aim of which is to determine who is right in controversies between flesh and blood people presided over by a judge who is human and witnesses who are usually ordinary people. Rules must be made to fit inquiries under such conditions, and not as if the court were a symposium of philosophers and logicians engaged in a matching of dialetics.

Mr. Justice LARSON, after this opinion was written, filed an opinion which seems to concede the correctness of the principles mentioned in this opinion but concurs in the results of the opinion of Mr. Justice PRATT. He admits that all acts of negligence, whether they initiated the career of mishap or were active or passive contributing agents to produce the final result may be properly charged as negligence and the cause of action founded on the combination of them. While I think his distinction between those negligent acts which increase or modify the extent or nature of the injury and those acts which initiate the career of mishap is philosophically correct, no such distinctions have as yet been made in the law. True it is that where negligence in one particular is alleged as an initiating cause and negligence in other particulars as cooperating causes along the route of mishap contributing to the final result, proof which shows that the mishap was caused or contributed to solely by the acts of negligence which the complaint showed by implication or otherwise were cooperating, without showing that the act alleged as initiating the sequence had anything to do with the cause, cannot sustain a verdict. But I do not see, in view of the evidence, that the jury could have been misled by the instruction that if "defendant was negligent in one or more of the particulars" above set out and "said negligence was the proximate cause of the injury" plaintiff could recover.

This for the reason that the jury *must* have concluded that the course of mishap was initiated by a slipping because all the evidence was that way. It might have chosen to disregard some of those acts of negligence which must of necessity, under the pleadings, have been cooperating causes; but since all the evidence was to the effect that Pennock slipped, it could not ignore the fact that such was the initiating cause.

There might have been some doubt in its mind as to whether the hot pot of grease was knocked over in an endeavor by plaintiff to clutch at something during his fall *resulting from slipping* while attempting to mount the stool on which it stood or whether he slipped while walking and knocked the pot off and over him. One witness, Floris, in halting English seemed to testify on cross-examination according to the former version whilst plaintiff testified according to the latter version. But Floris, on re-direct, answered questions in such a way as to leave no doubt that a slipping occurred. He says positively that Pennock slipped. At all events, there seems no conflict in the evidence that the plaintiff's course of mishap was initiated by a slipping and not by falling or fainting into the hot grease.

Speaking in a case, the name of which escapes me, Mr. Justice Cardozo, while on the New York Court of Appeals, stated: "Now-a-days we do not require pleadings to be guarded against all possible distortions of perverse ingenuity." To paraphrase with modifications better suited to an honest attempt of this court to arrive at a correct solution in this case, I should say that now-a-days we do not require instructions to be so framed as to exclude all possible interpretations which ingenious jurors and the technical jurist may put upon them.

McDONOUGH, Justice.

I concur in the views expressed by Mr. Justice WOLFE.