## MADSEN v. EAST JORDAN IRR. CO.

No. 6457.   Decided May 15, 1942.   (125 P. 2d 794.)

Liability for damage by concussion from blasting, note 92 A. L. R., 741; See also 22 Am. Jur., 180; 25 C. J. Explosives, sec. 18.

*Thomas & Thomas,* of Salt Lake City, for appellant.

*M. E. Wilson* and *Robert C. Wilson,* both of Salt Lake City, for respondent.

PRATT, Justice.

This is an appeal from a decree of the lower court sustaining a general demurrer to appellant's amended complaint and entering judgment for the respondent.

The facts, as alleged in the amended complaint, are as follows: Appellant owns the Madsen Mink Farm in Sandy, Utah, using said farm to breed and raise mink for sale. The farm is located 100 yards north of respondent's irrigation canal and, on May 5, 1941, respondent, in repairing its canal, blasted with explosives, causing vibrations and noises which frightened the mother mink and caused 108 of them to kill 230 of their "kittens" (offspring). The appellant further alleges that, by nature, habit and disposition all mink, when with and attending their young, are highly excitable and, when disturbed, will become terrified and kill their young. Appellant places a value of $25 each on said "kittens" and seeks to recover $5,750 as damages.

Respondent filed a general demurrer to the amended complaint, which demurrer was sustained and appellant given five days in which to amend.

Appellant failed to amend and judgment was entered for the respondent. It is from such judgment that this appeal is taken.

Respondent, in his brief, contends that, because the injury in the present case was consequential rather than immediate, the amended complaint does not state facts sufficient to constitute a cause of action in trespass. He further contends that the amended complaint did not state facts sufficient to constitute a cause of action in case.

It is conceded that the rule of absolute liability prevails when one uses explosives and the blasting of said explosives results in hurling of rock, earth or debris which causes injury to another. 22 Am. Jur., Explosions, Page 179, Paragraph 53; 25 C. J. 192. The weight of authority sustains the position that there is no distinction in liability for damage in nonconcussion and concussion cases.

This majority rule, led by California, prevails in 14 jurisdictions.

The minority rule, led by New York, holds that negligence must be alleged in concussion cases. These jurisdictions do not concede liability in blasting cases where damage is caused by shock or air vibrations rather than the hurling of rock, earth or debris. This distinction is based upon the historical differences between the common-law actions of trespass and case. There is no practical difference between liability occasioned by blasting which projects rocks on another's property or by creating a sudden vacuum and resultant concussion. 92 A. L. R. 742. Had the concussion in the instant case killed the kittens directly, without the intervention of the mother minks, the majority rule of liability in concussion cases would have been applicable, but the case at bar presents the additional element of the mother minks' independent acts, threby raising a question of proximate causation. Query: Did the mother minks' intervention break the chain of causation and therefore require an allegation of negligence?

Many years ago (1896) a Maine court held that the intervening act of an animal broke the chain of causation to such extent that blasting could not be considered the proximate cause of injury and negligence on the part of the blaster had to be proved. *Wadsworth* v. *Marshall*, 88 Me. 263, 34 A. 30, 32 L. R. A. 588. In the Wadsworth case, the plaintiff was riding along a public highway near which defendant was operating a quarry. He exploded a blast which frightened plaintiff's horse and she (plaintiff) was injured. There was a Maine statute requiring persons engaged in blasting to give reasonable notice of their intention to blast to all persons in the vicinity of the blast. The trial court excluded testimony as to the viciousness and nervousness of plaintiff's horse, proceeding upon the ground that defendant violated the statute by failing to give the required notice and therefore he was liable regardless of the character of the horse or any negligence of the plaintiff. The ap-

pellate court reversed the lower court's decision, holding that it would be a harsh construction of the statute to hold that the negligence of the quarry-man in not giving notice subjected him to liability for damages largely, if not wholly, resulting from the negligence of the traveler in riding an unsuitable horse. The court ruled that "the established doctrine of contributory negligence, as a defense, applies to this class of actions."

While the above ruling interjects an element—contributory negligence—which is absent in the present case, it impresses one with the thought that he who fires explosives is not liable for every occurrence following the explosion which has a semblance of connection to it. Jake's horse might become so excited that he would run next door and kick a few ribs out of Cy's jersey cow, but is such a thing to be anticipated from an explosion? Whether the cases are concussion or nonconcussion, the results chargeable to the nonnegligent user of explosives are those things ordinarily resulting from an explosion. Shock, air vibrations, thrown missiles are all illustrative of the anticipated results of explosives; they are physical as distinguished from mental in character. The famous Squib case does not mitigate what has been said in the preceding lines. That was a case where the mental reaction was to be anticipated as an instinctive matter of self-preservation. In the instant case, the killing of their kittens was not an act of self-preservation on the part of the mother mink but a peculiarity of disposition which was not within the realm of matters to be anticipated. Had a squib been thrown and suddenly picked up by a dog, in fun, and carried near another, it is ventured that we would not have had a famous Squib case, as such a result would not have been within the realm of anticipation.

We are of the opinion that the lower court properly sustained the demurrer.

Judgment affirmed. Costs to respondent.

MOFFAT, C. J., and LARSON and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

I concur. If actual tangible matter is projected by the blast on the property of another, it is held to be a trespass. One can sympathize with the view that if property is immediately injured by a force caused by a blast transmitted by concussion of air it is still a trespass. As stated in the opinion, there is a division of authority on that matter.

In the case of *O'Neill* v. *San Pedro, Los Angeles & Salt Lake Railroad Company,* 38 Utah 475, 114 P. 127, it was held that damage due to repeated vibrations over a long period of time must be chargeable in case, and negligence proved. Unless distinction can be made between a result caused by a series of recurring similar events and a result caused by one event, it would seem that the O'Neill case has committed this court to the view that a vibration transmitted through a solid medium acting on a building is not a trespass but calls for an action of trespass on the case. It would follow, therefore, that a force transmitted by a rarer medium would also call for action of trespass on the case. Realistically, there is a difference between a damage caused by continued vibrations of trains which are performing a necessary public service, and a damage caused by a single blast set off on the private property of another. It is such differences which make law not mainly the product of logic, but of experience, social necessity and distribution of the cost of consequences. Our common existence may require the law to hold that damage to property caused by unavoidable vibrations of passing trains is damnum absque injuria whilst to permit one owner, by a blast on his own property to shake down the house of another, requires a rule which recognizes that however free from negligence the first may be the second innocent person should not suffer. The very essence of fairness seems to suggest that if one, in order to obtain a certain type of use or enjoyment of his own

property, is compelled to blast, he must, as part of the cost of such use or enjoyment, pay the damages he causes to his innocent neighbor. Logically a series of imperceptible injuries to a dwelling due to the periodic vibration of trains over a long period of time is but the accumulated injuries inflicted by each of a series of trespasses. Law not following logic may say:

"The vibration of a train in itself is not dangerous like a blast from an explosion. Its single influence is imperceptible but the accumulated results may be injurious, but only if it can be shown that the accumulated results were the result of negligent construction or operation can we give damages. Otherwise, the property owner must submit to the greater needs of society."

Be that as it may, jurisdictions which hold that trespass lies where damage is directly and immediately caused by concussion arising from a blast on neighboring property cannot be said to hold that trespass lies for ultimate damage caused by an animal or a human who is affected by the concussions.

*Scott* v. *Shephard,* 1 Smith Leading Cases 337, 2 W. Bl. 892, 3 Wils. 403 (Squib Case), is not to the contrary. That was treated as a ricochetting Squib, the transfer by human hands being automatic. Distinctions based on the nature of the mental reaction may, in some cases, be too refined to be of practical use. We may say at least that where the reaction is purely reflex and automatic according to the Squib case the person so acting is as if an inanimate link in the chain of causation and the action lies in trespass. Where the animal or person commits an injury concededly acting in response to certain stimuli, but not purely automatically, which were the result of forces set in motion by the defendant, the action, if any, lies in case.

Being an action in case, negligence must be alleged and proved. We do not need to determine whether if negligence had been alleged a cause of action would have been stated under the circumstances of this case. A discussion of the "range of apprehension" as expressed in *Palsgraf* v. *Long*

*Island R. Co.,* 248 N. Y. 339, 162, N. E. 99, 100, 59 A. L. R. 1253, is contained in *Barrus* v. *Western Union Telegraph Co.,* 90 Utah 391, 62 P. 2d 113. I conceive of the intermediation of the reflexes of the mother mink as serving in legal concept a dual purpose. Even where it is held that injury due to concussion transmitted by air is a trespass where the injury is direct or immediate, a result arrived at through the concussion action on the mind of the mother mink would not be trespass; hence, negligence would have to be alleged. If alleged it would then be time to determine whether it was within the range of apprehensibility.